# In the United States Court of Federal Claims

No. 15-342L
(Filed: February 22, 2016)*
**\*Opinion originally filed under seal February 2, 2016**

| | |
|---|---|
| INTER-TRIBAL COUNCIL OF ARIZONA, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Indian Tribe Claims; Breach of Trust Obligations; Breach of Fiduciary Duty; Indian Tucker Act, 28 U.S.C. § 1505; Arizona-Florida Land Exchange Act of 1988, Pub. L. No. 100-696; 25 U.S.C. § 162a; American Indian Trust Fund Management Reform Act of 1994, Pub. L. No. 103-412; Motion to Dismiss; Subject Matter Jurisdiction; Rule 12(b)(1); Failure to State a Claim; Rule 12(b)(6); Statute of Limitations; 28 U.S.C. § 2501; Ripeness |

*Melody L. McCoy*, Boulder, CO, for plaintiff.

*Phillip M. Seligman*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Ruth A. Harvey*, Director, and *Michael J. Quinn*, Senior Litigation Counsel, for defendant.

## ORDER GRANTING-IN-PART AND DENYING-IN-PART GOVERNMENT'S MOTION TO DISMISS

**FIRESTONE**, *Senior Judge*.

Pending before the court is a motion filed by defendant the United States

("government") to dismiss this action filed by plaintiff Inter-Tribal Council of Arizona,

Inc. ("ITCA") for breach of tribal trust obligations.  The ITCA, which represents nineteen

Arizona tribes,[1] claims that the government is liable for a breach of trust by failing to

---

[1] The nineteen tribes that are members of the ITCA, and were members of the ITCA as of January 1, 1988, are the (1) Ak-Chin Indian Community, (2) Cocopah Indian Tribe, (3) Colorado

fulfill its obligations under the Arizona-Idaho Conservation Act of 1988, Pub. L. No. 100-696, 102 Stat. 4571, 4577-93 (1988) ("the Act"); 25 U.S.C. § 162a; and the American Indian Trust Fund Management Reform Act of 1994, Pub. L. No. 103-412, 108 Stat. 4239 (1994) ("the Trust Fund Reform Act").

Title IV of the Act, which is sometimes referred to as the Arizona-Florida Land Exchange Act, ratified an agreement between the government and the Barron Collier Company, Collier Development Corporation, and Collier Enterprises (together "Collier") to exchange federally owned property in Arizona for wetlands in Florida owned by Collier.  Compl. ¶ 57.  The ITCA alleges that under the Act the government is required to make payments into a trust that was established for the benefit of the ITCA's member tribes and for ensuring a lump sum payment to the ITCA's trust fund at the end of a 30-year payment period.  Under the Act, the trust was held by the government and maintained by annual payments from Collier.  Under the terms of the trust agreement, Collier was also obligated to pay into an annuity fund designed to ensure a lump sum payment at the end of 30 years.  The trust agreement gave the government a security interest in land owned by Collier as collateral on the 30-year payment obligation.

Collier stopped making payments into the trust and into the annuity fund in 2012. The ITCA alleges that the government has breached its trust obligations by failing to

---

River Indian Tribes, (4) Fort McDowell Yavapai Nation, (5) Fort Mojave Tribe, (6) Gila River Indian Community, (7) Havasupai Tribe, (8) Hopi Tribe, (9) Hualapai Tribe, (10) Kaibab-Paiute Tribe, (11) Pascua Yaqui Tribe, (12) Quechan Tribe, (13) Salt River Pima-Maricopa Indian Community, (14) San Carlos Apache Tribe, (15) Tohono O'Odham Nation, (16) Tonto Apache Tribe, (17) White Mountain Apache Tribe, (18) Yavapai Apache Nation, and (19) Yavapai-Prescott Indian Community.  Compl. ¶¶ 18-19.

make the payments itself when Collier stopped paying.  The ITCA also charges that the government is liable for breach of trust by allowing a private bank, rather than the government, to hold the annuity and by failing to make payments into the annuity fund when Collier stopped paying.  The ITCA also claims that the government breached its trust responsibility by failing to properly maintain collateral intended to ensure a full payment at the end of the 30-year period.  Finally, the ITCA claims that the government breached its trust obligations by failing to prudently invest the trust funds and by failing to provide a proper accounting of the funds.

The government has filed a motion to dismiss the complaint on the grounds that the government does not have any obligation under the Act to make up Collier's missed payments to either the trust fund or the annuity.  The government further argues that it has no trust obligation under the Act to monitor or supplement the value of the collateral or security obtained from Collier.  In this connection, the government also argues that to the extent the ITCA's breach of trust claims relate to the release of collateral more than 6 years ago, this portion of the claim is barred by the 6-year statute of limitations in 28 U.S.C. § 2501.[2]  In addition, the government asserts that the ITCA's claims with regard to the collateral are not ripe because the government is in ongoing litigation against Collier in United States District Court for the District of Arizona ("the district court") to resolve the collateral issues.  The government further argues that the ITCA has

_____

[2] The court's 6-year statute of limitations is "jurisdictional," meaning it is not subject to waiver or equitable tolling.  See, e.g., Sikorsky Aircraft Corp. v. United States, 773 F.3d 1315, 1321 (Fed. Cir. 2014) (citing John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 139 (2008)).

failed to state a claim with regard to the government's management of the trust fund.  The government states that the Act gave the government unreviewable discretion in making investment decisions and that there is no allegation of facts to show mismanagement. Finally, the government asserts that the court lacks jurisdiction to grant the ITCA's claim for an accounting on the grounds that the ITCA cannot establish a claim for money damages based on management of the trust fund.  In such circumstances, the government argues that the ITCA must go to the district court for an accounting.  Based on these arguments, the government asks the court to dismiss the ITCA's claims for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") and for failure to state a claim pursuant to RCFC 12(b)(6).

For the reasons below, the court agrees with the government that this court does not have jurisdiction over the ITCA's claims based on the government's failure to make up Collier's missed payments.  These claims fail for lack of jurisdiction on the grounds that the ITCA has not established a fiduciary obligation to make the payments under the Act and thus the ITCA has failed to establish a money-mandating breach of trust claim.

However, the court finds that the ITCA has identified potential money-mandating breach of trust claims with regard to the government's alleged failure to monitor and maintain adequate collateral to ensure the final payment into the fund.  Yet, a portion of the collateral-related claims may be barred by the 6-year statute of limitations.  Thus, the court finds that a final decision on its jurisdiction to hear those claims must await a determination of the merits.  See Oswalt v. United States, 41 F. App'x 471, 472 (Fed. Cir. 2002) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §

4

1350, at 237 (2d ed. 1990)).  In addition, the court finds that the ITCA has failed to state a claim to the extent that it argues the government breached its trust obligations by failing to hold the trust fund payments security in trust at the Department of Treasury rather than in a private annuity and certain interests in real property.

Finally, the court agrees with the government that plaintiff has not stated a claim with regard to mismanagement of the trust fund and as such this court does not have jurisdiction to order an accounting.

Accordingly, the government's motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.   BACKGROUND[3]

For many years, the United States Department of the Interior's ("DOI") Bureau of Indian Affairs ("BIA") operated a school for Indian children on federally owned property in Phoenix, Arizona.  From 1891 to 1935, the property was the site of the Phoenix Indian School, a federal Indian boarding school operated by the BIA for children of all grade levels.  Compl. ¶ 23.  Beginning in 1935, the BIA operated the school primarily as a residential secondary school and it became known as the Phoenix Indian High School.  Compl. ¶ 24.  In 1987, over objections by the ITCA and others, the DOI determined that the Phoenix Indian High School was no longer needed.  Compl. ¶ 32.  By that time, the school property had become valuable commercial real estate and the DOI had begun

---

[3] The following facts are taken from the complaint and have not been contested unless expressly noted.

considering proposals to exchange the school property for other lands and interests. Compl. ¶¶ 40, 42.

Title IV of the Act ratified an agreement between the government and Collier to exchange the Phoenix Indian High School property for wetlands in Florida owned by Collier.[4]  Compl. ¶ 57.  In addition to the land exchange, the Act and the agreement required Collier to pay $34.9 million to account for the additional financial benefit Collier received in the exchange.  Compl. ¶ 4.  Ninety-five percent of the funds were to be deposited into an Arizona InterTribal Trust Fund ("AITF") for the benefit of tribes that were members of the ITCA.  Compl. ¶ 5.  The remaining 5 percent was to be deposited into a Navajo Trust Fund for the benefit of the Navajo Nation.  Id.[5]  The Phoenix Indian High School was closed in 1990 and, in 1992, the government and Collier executed a trust fund payment agreement, promissory note, and deed of trust to implement the land exchange.  Compl. ¶¶ 58, 74, 76, 82.

Under the trust fund payment agreement and promissory note, as permitted by the Act, the Secretary of the Interior agreed to accept the $34.9 million from Collier in the form of 30 annual interest payments with the entire principal amount to be paid at the time of the last annual interest payment.  Compl. ¶¶ 60-62.  The Act permitted the

---

[4] The Act also required the Secretary of the Interior to convey 20 acres of the Phoenix Indian High School property to the City of Phoenix and transfer jurisdiction and control over 15.5 acres of the property to the Veterans' Administration (4.5 acres of which were to be conveyed to the State of Arizona).  Act § 402(b).

[5] The Navajo Nation is not a party in this case and only the AITF, which benefits the ITCA member tribes, is at issue.

Secretary of the Treasury, at the direction of DOI, to invest, "in interest-bearing deposits and securities in accordance with the Act of June 24, 1938 (25 U.S.C. § 162a) . . . any portion of the Trust Income not used by [the government] in any year." Act § 405(c)(1), (3). Section 401(21) of the Act defines the term "Trust Income" as "interest earned on amounts deposited into [the two trust funds] and any amounts paid into each such trust fund in the form of annual Trust Fund Payments."

The Act also required Collier, in making an offer for the land exchange, to provide a detailed description of collateral for securing its payment obligation and "evidence of ownership and value of such collateral sufficient to permit the [government] to determine whether such collateral is adequate to secure the payment obligations . . . under the Trust Fund Payment Agreement." Act § 402(h)(3)(D). In addition, because the government elected to receive annual payments, the Act requires that "the Secretary of the Treasury shall hold in trust the security provided in accordance with the Trust Fund Payment Agreement." Act § 405(c)(2).[6] Pursuant to the trust fund payment agreement and deed of trust, Collier's payment obligations were to be secured by a private annuity,[7] a lien on Phoenix Indian High School property retained by Collier following a separate land

---

[6] The trust fund payment agreement between the government and Collier also states that the parties did not intend to confer any benefit under the agreement to other persons. Compl. ¶ 87, Ex. 23 at 17. Therefore, the ITCA focuses on the government's obligations under the Act.

[7] Collier agreed to pay funds annually into a private annuity that was to have a value of $34.9 million at the end of the 30-year period. Compl. ¶ 78-82.

exchange with the City of Phoenix, and a lien on Collier's rights in other Phoenix property.  Compl. ¶ 82.[8]

In 1998 and 2007, the government complied with Collier's requests for releases of the liens on the other Phoenix property.  Compl. ¶¶ 89, 127-30.  Therefore, the government's current lien under the deed of trust is only on the Phoenix Indian High School property retained by Collier.  Compl. ¶ 89.  The present value of the Phoenix Indian High School property has left Collier's payment obligations under-collateralized.  Compl. ¶¶ 100, 102.  In addition, Collier stopped making tax payments on the Phoenix Indian High School property, resulting in a tax lien with a potential for foreclosure.  Compl. ¶¶ 94-99.[9]

From 1997 to 2011, Collier made fifteen annual interest payments, totaling $44,497,500, and fifteen payments into the private annuity, totaling $9,662,000.  Compl.

---

[8] In 1992, after a 4-year extension of the closing date for the land exchange, the ITCA and six tribes in their individual capacity sued the Secretary of the Interior and Collier to prevent the Secretary from executing the trust fund payment agreement on the grounds that it was a violation of the Act and the Secretary's fiduciary duty to the tribes.  See Inter Tribal Council of Ariz., Inc. v. Babbitt, 51 F.3d 199, 202 (9th Cir. 1995).  The plaintiffs claimed, among other things, that the Secretary abused his discretion by accepting inadequate collateral and by agreeing to a provision that Collier's payment obligations were to be without personal recourse against Collier.  See id. at 200-01.  The Ninth Circuit affirmed the district court's dismissal for lack of subject matter jurisdiction on the grounds that the Act precluded judicial review of the challenged actions under the Administrative Procedure Act, 5 U.S.C. § 701(a)(1) ("the APA").  See id. (citing Act § 402(h)(9)).  The Ninth Circuit also found that there was no common law trust created by the use of tribal lands or resources because the Phoenix Indian High School property was owned and controlled by the government.  See id. at 203.  The tribes' only interest was in the proceeds of the trust funds established by the Act and the Act prohibited judicial review of the challenged actions under the APA.  See id.

[9] The plaintiff argues that the government's failure to pay taxes, leading to the risk of foreclosure, also amounts to a breach of trust regarding monitoring and maintenance of the collateral.  Compl. ¶ 148.

¶ 84.  Collier did not make its required payments for 2012 and notified the government that it did not intend to make any more payments.  Compl. ¶ 85.  According to Collier, its remaining obligations include an additional $44,497,500 for interest payments and $22 million for payments for the principal.  Compl. ¶ 92.

On January 28, 2014, the government filed an action against Collier in the district court for specific performance of a provision in the deed of trust requiring the maintenance of a certain level of collateral for the security or, in the alternative, for the imposition of a constructive trust on Collier's interest in the properties for which the government released its liens in 1998 and 2007 to prevent Collier's unjust enrichment. Compl. ¶¶ 88-103.  That case is ongoing.  Compl. ¶ 106.[10]

The ITCA filed its complaint in this court on April 2, 2015.  On July 31, 2015, the government filed a motion to dismiss (ECF No. 10).  The ITCA filed its response to the government's motion on October 9, 2015 (ECF No. 13), and the government filed its reply on October 26, 2015 (ECF No. 16).  Oral argument was held on January 28, 2016.

## II.   LEGAL STANDARDS

A party invoking this court's jurisdiction must establish subject matter jurisdiction by a preponderance of the evidence.  See Fid. & Guar. Ins. Underwriters, Inc. v. United

---

[10] On May 13, 2015, after the district court dismissed Collier's counterclaim against the government for lack of jurisdiction, Collier filed a complaint in the Court of Federal Claims to recover contract damages, including attorneys' fees incurred in the district court action, arising from the government's alleged breach of the agreements at issue in this case.  Pl.'s Resp. 12-13; see also Barron Collier Co. v. United States, No. 1:15-cv-495 (Fed. Cl. filed May 13, 2015).  The parties represent that Collier's ongoing litigation against the government has no effect on this case.

States, 805 F.3d 1082, 1087 (Fed. Cir. 2015) (citing Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).  "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff."  Estes Exp. Lines v. United States, 739 F.3d 689, 692 (Fed. Cir. 2014) (citing Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993)).

To avoid dismissal under RCFC 12(b)(6) for failure to state a claim, "a complaint must allege facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief."  Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014) (citing Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012)) (internal quotation marks omitted).  "The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"  Kam-Almaz, 682 F.3d at 1367-68 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  However, "a court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Id. (citing Twombly, 550 U.S. at 555).

The Tucker Act, 28 U.S.C. § 1491(a)(1), grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  The Indian Tucker Act "confers a like waiver for Indian

tribal claims that 'otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe.'"   United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) (citing 28 U.S.C. § 1505).   However, "[n]either the Tucker Act nor the Indian Tucker Act creates substantive rights; they are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."   United States v. Navajo Nation, 556 U.S. 287, 290 (2009) ("Navajo II") (citations omitted).   The Supreme Court has explained that "[t]he other source of law need not explicitly provide that the right or duty it creates is enforceable through a suit for damages, but it triggers liability only if it can fairly be interpreted as mandating compensation by the Federal Government."   Id. (citations and internal quotation marks omitted).

Thus, a tribal plaintiff must clear "two hurdles" to invoke jurisdiction under the Indian Tucker Act.   Id.   First, the plaintiff "must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties."   Id. (citing United States v. Navajo Nation, 537 U.S. 488, 506 (2003) ("Navajo I")).   At this stage, "a statute or regulation that recites a general trust relationship between the United States and the Indian People is not enough to establish any particular trust duty."   Hopi Tribe v. United States, 782 F.3d 662, 667 (Fed. Cir. 2015) (citing United States v. Mitchell, 445 U.S. 535, 542-44 (1980) ("Mitchell I")). "The Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute."   United States v. Jicarilla Apache Nation, 131 S. Ct. 2313, 2325 (2011).

Second, the plaintiff must show that the relevant source of substantive law "can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties" imposed by the governing law.  Navajo II, 556 U.S. at 291.  "At the second stage, principles of trust law might be relevant 'in drawing the inference that Congress intended damages to remedy a breach.'"  Id. (citing White Mountain Apache Tribe, 537 U.S. at 477).  The Supreme Court has "looked to common-law principles to inform [its] interpretation of statutes and to determine the scope of liability that Congress has imposed."  Jicarilla Apache Nation, 131 S. Ct. at 2325 (citing White Mountain Apache Tribe, 537 U.S. at 475-76).  The Federal Circuit has noted that "when a statute establishes specific fiduciary obligations, 'it naturally follows that the Government should be liable in damages for the breach of its fiduciary duties.  It is well established that a trustee is accountable in damages for breaches of trust.'"  Hopi Tribe, 782 F.3d at 668 (citing United States v. Mitchell, 463 U.S. 206, 226 (1983) ("Mitchell II")).

Under the general statute of limitations for this court, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  28 U.S.C. § 2501.

Finally, in determining whether a dispute is ripe for review, a court must evaluate "(1) the 'fitness' of the disputed issues for judicial resolution; and (2) 'the hardship to the parties of withholding court consideration.'"  Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1348 (Fed. Cir. 2015) (citing Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967); Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1383-84 (Fed. Cir. 2012)).  Under the first prong, "an action is fit for judicial review where further

factual development would not 'significantly advance [a court's] ability to deal with the legal issues presented.'" <u>Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.</u>, 527 F.3d 1278, 1295 (Fed. Cir. 2008) (citing <u>Nat'l Park Hospitality Ass'n v. Dep't of Interior</u>, 538 U.S. 803, 812 (2003)).  Under the second prong, "withholding court consideration of an action causes hardship to the plaintiff where the complained-of conduct has an "immediate and substantial impact" on the plaintiff." <u>Id.</u> (citing <u>Gardner v. Toilet Goods Ass'n</u>, 387 U.S. 167, 171 (1967)).

## III.    DISCUSSION

### A.    The Court Lacks Jurisdiction to Hear Claim I of the Complaint because the Act Does Not Establish a Duty for the Government to Substitute Collier's Missed Payments.

In Claim I of its complaint, the ITCA alleges that the Act establishes a fiduciary duty on the part of the government to collect, deposit, and make payments into the AITF. The ITCA argues that because the Act requires Collier to make payments to the government and requires the government to collect those payments and deposit the payments into the AITF, the government's failure to collect Collier's missed payments makes the government liable for those missed payments.  The ITCA claims that the government must be liable for money damages for its failure to collect the missed payments in order to give meaning to the statutory language establishing the AITF.  The Act provides that the AITF "shall consist of," among other things, "that portion of the Monetary Proceeds properly allocable to [the AITF] . . . ." <u>See</u> Pl.'s Resp. 17-21 (citing

Act § 405(b)).[11]   As the ITCA puts it, "[i]f Collier does not make the payments due, the

United States must, or the Act is violated."  Id. at 20.  Therefore, the ITCA argues, the

government's failure to make up Collier's missed payments into the AITF is a breach of

trust.  See Shoshone Indian Tribe of Wind River Reservation v. United States, 364 F.3d

1339, 1350 (Fed. Cir. 2004); Osage Tribe v. United States, 68 Fed. Cl. 322, 325-28

(2005).[12]

The government acknowledges that the Act requires the government to collect

payments from Collier and deposit the monies it receives into the AITF, but denies that

the Act establishes a fiduciary duty to make up Collier's missed payments.  Instead, the

government argues, the Act and ordinary trust principles at most require the government

"to take prudent steps to try to collect as much of the missing required payments from

Collier as is reasonable," which the government states it is doing in the government's

action in equity against Collier in the district court.  Def.'s Mot. to Dismiss 5.  The

government argues that this claim must be dismissed because plaintiff has not shown that

the government has a trust obligation to make payments if Collier stops making

payments.  See, e.g., Hopi Tribe, 782 F.3d at 667 ("[T]he United States is only subject to

---

[11] Under section 401(10)(A) of the Act, "[t]he term 'Monetary Proceeds' means . . . the cash
amount required to be paid to the United States by Collier upon closing of the Land Exchange."

[12] The ITCA also cites an undated, unsigned, draft memorandum, from the Special Assistant to
the Associate Solicitor, Division of Indian Affairs, to the Assistant Secretary for Indian Affairs,
regarding the Collier land exchange.  The memorandum states that:  "[. . .]"  Pl.'s Resp. 21, Ex.
1-3 at 55.  However, the court agrees with the government that the statement alone does not
create a money-mandating fiduciary duty; such a duty must arise from "a substantive source of
law that establishes specific fiduciary or other duties."  Hopi Tribe, 782 F.3d at 667 (citing
Navajo II, 556 U.S. at 290).

those fiduciary duties that it specifically accepts by statute or regulation." (citing <u>Jicarilla</u>

<u>Apache Nation</u>, 131 S. Ct. at 2325; <u>Navajo I</u>, 537 U.S. at 506)).[13]

   The court agrees with the government.  The Act expressly requires Collier to make

payments to the government and requires the government to collect those payments and

deposit a portion of the payments into the AITF.  The Act does not, however, impose any

obligation on the government to make payments if Collier fails to make payments.

Without some clear requirement for the government to pay, if Collier defaults, the court

will not impose one.  <u>See</u> <u>Navajo II</u>, 556 U.S. at 302 (requiring a tribe to "identify a

specific, applicable, trust-creating statute or regulation that the Government violated").

   This outcome is consistent with the cases cited by the ITCA.  In <u>Shoshone Indian</u>

<u>Tribe of Wind River Reservation v. United States</u>, the Federal Circuit described a

fiduciary duty on the part of the government "to timely collect amounts due and owing to

the Tribes" under relevant contracts.  364 F.3d at 1350.  Similarly, in <u>Osage Tribe v.</u>

<u>United States</u>, the Court of Federal Claims found that an express statutory instruction to

hold in trust "all moneys due" established a "duty to verify that 'all moneys due' under

---

[13] The ITCA also claims, and the government denies, that the Act can fairly be interpreted as mandating compensation for the government's breach of the alleged duty to substitute the missed payments.  <u>See</u> <u>Osage Tribe</u>, 68 Fed. Cl. at 333.  Because the court finds that the Act does not establish a fiduciary duty for the government to make up Collier's missed payments, the court does not reach the question of whether the Act mandates compensation for a breach of that alleged duty.  <u>See</u> <u>Jicarilla Apache Nation</u>, 131 S. Ct. at 2325 ("When 'the Tribe cannot identify a specific, applicable, trust-creating statute or regulation that the Government violated, . . . neither the Government's 'control' over [Indian assets] nor common-law trust principles matter.'" (citing <u>Navajo II</u>, 556 U.S. at 302)).  Similarly, the court does not reach the government's arguments that the ITCA has failed to state a claim for which relief can be granted or that this claim is not ripe for review.  <u>See</u> Def.'s Mot. to Dismiss 11-14.

the terms of the [contracts] were in fact paid to the government and deposited to the account of the trust beneficiary." 68 Fed. Cl. at 328. Those cases dealt with the government's failure to undertake its collection obligation with regard to monies owed to the tribes. In this case, the ITCA does not allege that the government ignored its obligation to collect payments from Collier. Rather, Collier has refused to make further payments. The ITCA has not pointed to anything in the Act which expressly or implicitly requires the government to make payments when Collier breaches its obligation by refusing to make payments. The government may have an obligation to compel Collier to pay, but not to make up the payments. Therefore, the court lacks jurisdiction to hear Claim I of the complaint.

### B. The ITCA Raises Money-Mandating Breach of Trust Claims Related to Maintaining the Security that are Ripe for Review but Jurisdictional Issues are Intertwined with the Merits.

In Claim II of the complaint, the ITCA alleges that the government has breached its fiduciary duties under the Act by failing to hold and maintain sufficient collateral to secure Collier's payment obligations. Specifically, the ITCA claims that the government has:

> . . . failed to maintain required annual payments of principal into the Annuity; failed to calculate correctly the Release Level Amount required by the Deed of Trust[;] failed to assess whether the value of the collateral complies with the Deed of Trust; failed to obtain supplemental collateral in accordance with the Deed of Trust; and, failed to address the unpaid property taxes assessed by Maricopa County on the remaining former Phoenix Indian School Property, the tax lien and sale of the tax lien certificate and its accumulating interest, and the risk of foreclosure on the property.

Compl. ¶ 148.  The ITCA argues that the court has jurisdiction to hear its claims related to holding and maintaining the collateral based on the Act's requirement that "the Secretary of the Treasury shall hold in trust the security provided in accordance with the Trust Fund Payment Agreement."  Act § 405(c)(2).

In this connection, the ITCA also claims that the government has breached its trust obligations by failing to have the Secretary of the Treasury hold the trust fund payments security.  Compl. ¶¶ 146-47.  The government argues that the ITCA has not stated a claim upon which relief can be granted because the ITCA has not alleged any facts to tie the location of the security to any possible injury.  Def.'s Mot. to Dismiss 15-16.  The court agrees with the government that the ITCA's complaint fails to "allege facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief" with regard to the location of the security.  Matthews, 750 F.3d at 1322 (citation omitted).  Accordingly, the ITCA's claims based on the location of the security are dismissed pursuant to RCFC 12(b)(6).

The government also asserts that the Act does not create the claimed fiduciary duties regarding the monitoring and maintenance of collateral.  Def.'s Mot. to Dismiss 14-15.  The government argues that the Act directs the government to "hold" collateral and the obligation is on Collier to supplement the collateral if necessary.  The government thus argues that it cannot be held liable for a breach of trust by failing to monitor the value of the collateral or by failing to obtain supplemental collateral.  Def.'s Reply 7-8.  In the alternative, the government argues that a portion of the ITCA's claims in this regard are barred by the 6-year statute of limitations in that the alleged breach of

17

trust took place in 1998 and 2007, more than 6 years before plaintiff filed suit.  Def.'s Mot. to Dismiss 15-22.

Here, the court agrees with the ITCA regarding the fiduciary duties established under the Act.  The government's trust obligations depend on the contours of the relationship defined by statute or regulation.  See Jicarilla Apache Nation, 131 S. Ct. at 2325 (citing Mitchell II, 463 U.S. at 224).  A "limited" or "bare" trust does not impose "all fiduciary duties ordinarily placed by equity upon a trustee."  Mitchell I, 445 U.S. at 542-44; see also Mitchell II, 463 U.S. at 224-28.  In United States v. White Mountain Apache Tribe, the Supreme Court found that a statute which "invest[ed] the United States with discretionary authority to make direct use of portions of the trust corpus" went beyond creating a "bare trust," leading the Court to infer that "an obligation to preserve . . . property improvements was incumbent on the United States as trustee . . . because elementary trust law . . . confirms the commonsense assumption that a fiduciary actually administering trust property may not allow it to fall into ruin on his watch."  537 U.S. at 475.  In this case, section 402(h)(3)(D) of the Act granted the government discretion "to determine whether . . . collateral [in an offer for the land exchange was] adequate to secure the payment obligations" and section 405(c)(2) directs the government to "hold in trust the security provided in accordance with the Trust Fund Payment Agreement."  Therefore, the Act is properly read as requiring the government to hold sufficient security in trust to ensure adequate funds to meet Collier's financial obligations under the Act.  Congress's decision to impose this requirement on the government and to ensure there will be sufficient collateral to cover Collier's payments to the trust fund, presumably in

the event of a default, allows the court to infer that the government has a duty to hold and maintain adequate security for the benefit of the trust. See White Mountain Apache Tribe, 537 U.S. at 475.[14]   The court further finds that the Act can fairly be interpreted as also mandating compensation for damages sustained by a breach of those obligations. See Navajo II, 556 U.S. at 291; White Mountain Apache Tribe, 537 U.S. at 477. "Given [a] duty on the part of the trustee to preserve corpus, 'it naturally follows that the Government should be liable in damages for the breach of its fiduciary duties.'" White Mountain Apache Tribe, 537 U.S. at 475-76 (citing Mitchell II, 463 U.S. at 226).  Thus, if the government breached its duty to ensure that there is adequate collateral to cover Collier's payment obligations, the government, which had discretion regarding the collateral, will be financially liable.

Nonetheless, to the extent that the ITCA's breach of trust claims with regard to holding and maintaining adequate collateral are based on the government's releases of liens in 1998 and 2007, the court agrees with the government that the portion of the ITCA's collateral-related claims may be barred by the 6-year statute of limitations in 28 U.S.C. § 2501.  Def.'s Mot. to Dismiss 18-20.  The ITCA argues that the claims are not

---

[14] The government notes that in 1995, the Ninth Circuit dismissed the ITCA's claims against the Secretary of the Interior and Collier regarding the proposed terms of the land exchange and found that there was no common law trust involved in the matter.  Def.'s Resp. 15 (citing Inter Tribal, 51 F.3d at 203).  However, the Ninth Circuit's decision was based on the Act's express preclusion of judicial review, under the APA, of the challenged actions.  See Inter Tribal, 51 F.3d at 200-01, 203 (citing Act § 402(h)(9)).  The Ninth Circuit also determined that because the Phoenix Indian High School property was federally owned, there was no common law trust at issue.  See id. at 203.  In this case though, the ITCA's claims are based on the trust relationship which is expressly established by section 405 of the Act, not the management of tribal resources.

barred because the ITCA did not have actual notice and the fiduciary relationship between the government and the ITCA prevents the government from charging the ITCA with constructive notice.  Pl.'s Resp. 27 n.7.  In addition, the ITCA asserts that the government's breach of trust with regard to maintaining the security or collateral extends beyond the actions in 1998 and 2007 to include the government's lack of action on the tax lien placed on the remaining collateral and in not requiring additional collateral from Collier.  These claims, the ITCA argues, are based on the government's breach of a continuing duty to ensure that the trust fund is protected, for example from default, and are thus not barred by the statute of limitations.  The court finds that because the statute of limitations issues are tied to the merits of Claim II of the complaint, Claim II should not be dismissed at this stage in the proceedings.  See, e.g., Sci. Applications Int'l Corp. v. United States, 102 Fed. Cl. 644, 656 (2011) (postponing determination of jurisdictional issues that were intertwined with the merits of the case (citing Oswalt, 41 F. App'x at 472; Forest Glen Props., LLC v. United States, 79 Fed. Cl. 669, 678 (2007))).

In addition, the court finds that the ITCA's claims regarding breach of trust in connection with monitoring and maintaining collateral are ripe for review.  The government asserts that the ITCA's claims related to collateral matters are not ripe due to the government's suit against Collier in the district court.  Def.'s Mot. to Dismiss 22.  In the district court litigation, the government seeks to supplement the collateral held by the government as security for Collier's payment obligations or, in the alternative, to impose a constructive trust on Collier's interest in the properties for which the government released its liens in 1998 and 2007 to prevent Collier's unjust enrichment.  Def.'s Mot. to

Dismiss 6, 22.  According to the government, the ITCA's breach claims are based on

"contingent future events that may not occur as anticipated, or indeed may not occur at

all."  Shinnecock, 782 F.3d at 1349 (citing Thomas v. Union Carbide Agric. Prods. Co.,

473 U.S. 568, 580-81 (1985)).  The government also states that "the amount of damages

suffered by the ITCA for the Claim II breaches, if they exist, cannot be determined until

after the district court case is resolved."  Def.'s Mot. to Dismiss 22 n.10.[15]

In response, the ITCA asserts that there is insufficient overlap between the legal

issues presented by the ITCA's claims related to the security and the legal issues in the

district court litigation to sustain the government's argument.  The ITCA also states that

similar arguments were rejected in Confederated Tribes & Bands of the Yakama Nation

v. United States, 89 Fed. Cl. 589 (2009) and distinguishes this case from Shinnecock

Indian Nation v. United States, 112 Fed. Cl. 369 (2013), aff'd in relevant part, 782 F.3d

at 1348-49.  In Yakama Nation, the plaintiffs claimed that the government breached its

trust and fiduciary duties by failing to collect rent owed by a third party and by allowing

the statute of limitations for judicial enforcement to expire.  89 Fed. Cl. at 592-602.  The

government argued that the plaintiffs' claim was not ripe because the government still

had administrative options for collecting the debt and because the statute of limitations

had not necessarily expired due to the third party's acknowledgments of and requests to

negotiate its debt.  Id. at 602.  The court found that the "record of dilatory BIA behavior

---

[15] In its argument that Claim I of the complaint is not ripe, the government also asserts that waiting until the district court litigation is resolved will cause no hardship to the ITCA.  Def.'s Mot. to Dismiss 14.

culminating in the expiration of the statute of limitations" rendered the plaintiffs' claim

fit for judicial review.  Id. at 604-16.  Whether the government might be able to

subsequently collect the third party's debt administratively did not alter the claim or

make it unripe.  Id. at 616.  In Shinnecock, the Federal Circuit held that the plaintiff's

breach of trust claims against the United States were not ripe where the claims were

based on a district court's judgment in another case and an appeal of that judgment was

pending before the Second Circuit.  See 782 F.3d at 1348-49.

The court agrees with the ITCA that this claim is ripe for review.  The outcome of

the district court litigation will not change the legal issues presented before this court, in

that the government has an obligation to maintain adequate collateral.  The ITCA argues

that it is has sustained immediate harm due to the government's alleged failure to

maintain adequate collateral.  The ITCA alleges that the years of missed payments and

lack of security threatens the sustainability of the AITF and that the ITCA's member

tribes are not drawing down funds from the AITF until this matter is resolved.  Compl.

¶¶ 109-10.  In such circumstances, the court finds the breach claim regarding monitoring

and maintaining adequate collateral is ripe.

### C.   The Government has an Obligation to Invest Prudently and Account for Trust Funds, but the ITCA Fails to State a Claim upon which Relief Can Be Granted.

In Claim III of the complaint, the ITCA alleges that the government has failed to

meet its fiduciary duties under the Act and other statutes to invest prudently and properly

account for the AITF funds.  Compl. ¶ 151.  Although the ITCA acknowledges that the

Act gives the government discretion in how to invest Collier's annual payments, it argues

that the Act limits the government's discretion to investments in "interest-bearing deposits and securities in accordance with [25 U.S.C. § 162a]."  Pl.'s Resp. 36-38 (citing subsections 405(c)(1) and (3) of the Act).  The ITCA further argues that the Trust Fund Reform Act establishes specific fiduciary duties on the part of the government to account properly and fully for trust funds.  Pl.'s Resp. 38-39.  The ITCA asserts that the government's failure to provide a full and accurate trust account, as required by the Trust Fund Reform Act, has harmed the ITCA in an amount to be determined following resolution of the liability issue.  Pl.'s Resp. 40.

The government argues that the Act permits, but does not require, the government to make investment decisions in accordance with 25 U.S.C. § 162a.  The government further asserts that the Act gave the government discretion in making investment decisions and "a discretionary or non-mandatory obligation cannot be the source of a money-mandating duty."  Def.'s Mot. to Dismiss 22-25 (citing Navajo I, 537 U.S. at 506).  Therefore, according to the government, any investment duties under the Act or 25 U.S.C. § 162a cannot be construed as money mandating.  In addition, the government argues that the court lacks jurisdiction to hear the ITCA's accounting claim because it is an equitable action and the court cannot grant equitable relief independent of a showing that the government is liable for money damages.  Def.'s Mot. to Dismiss 25 (citing Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716 (Fed. Cir. 1998); Cherokee Nation of Okla. v. United States, 21 Cl. Ct. 565, 582 (1990); Klamath & Modoc Tribes & Yahooskin Band of Snake Indians v. United States, 174 Ct. Cl. 483, 487 (1966)).

The court finds that the plain language of the statute requires the government to "invest in accordance with the requirements of" section 405(c)(1) of the Act if it chooses to invest a portion of the Trust Income not used by the Secretary in any year. Section 405(c)(1) of the Act provides that the government "shall invest the amount . . . in interest-bearing deposits and securities in accordance with [25 U.S.C. § 162a]." However, the complaint does not allege any facts to show how the government breached this duty.  Similarly, regardless of whether the ITCA's accounting claim is an action in equity, the ITCA does not allege any facts to show that the government has not accounted properly and fully for the AITF funds.  Accordingly, Claim III of the complaint is dismissed for failure to state a claim pursuant to RCFC 12(b)(6).  See, e.g., Kam-Almaz, 682 F.3d at 1367-68.[16]

## IV.    CONCLUSION

The court finds that it lacks jurisdiction to hear Claim I of the ITCA's complaint. The court also finds that the ITCA's claims based on the location of the security, under Claim II of the complaint, and the ITCA's investment and accounting claims, under Claim III of the complaint, fail to state a claim upon which relief can be granted. Therefore, those claims are dismissed pursuant to RCFC 12(b)(1) and RCFC 12(b)(6). The court further finds that a final decision on its jurisdiction to hear the ITCA's claims related to the government's releases of liens, under Claim II of the complaint, must await

---

[16] The ITCA may seek an accounting in federal district court to identify any breach of the government's investment and accounting duties and proceed with an action if it discovers any financial impropriety.

a determination of the merits because the issues are intertwined.  Accordingly, the government's motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**. The court will schedule a status conference to discuss next steps in the proceedings.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge