# In the United States Court of Federal Claims

No. 15-342L
(Filed: October 17, 2018)

| | |
|---|---|
| INTER-TRIBAL COUNCIL OF ARIZONA, INC., | Indian Tribe Claims; Breach of Trust Obligations; Breach of Fiduciary Duty; Indian Tucker Act, 28 U.S.C. § 1505; Arizona-Florida Land Exchange Act of 1988, Pub. L. No. 100-696; 25 U.S.C. § 162a; Motion to Dismiss; Subject Matter Jurisdiction; Rule 12(b)(1); Failure To State a Claim; Rule 12(b)(6); Statute of Limitations; 28 U.S.C. § 2501. |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

*Melody L. McCoy*, Boulder, CO, for plaintiff.

*Phillip M. Seligman*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Ruth A. Harvey*, Director, and *Michael J. Quinn*, Senior Litigation Counsel, for defendant.

## OPINION ON DEFENDANT'S MOTION TO DISMISS

**FIRESTONE**, *Senior Judge*.

Pending before the court is the United States' (the "government's") motion to dismiss (ECF No. 59), under Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), Inter-Tribal Council of Arizona's ("ITCA") Second Amended Complaint (ECF No. 58) in this breach of trust action. This court previously dismissed portions of ITCA's initial complaint for lack of jurisdiction on February 22, 2016. *Inter-Tribal Council of Az., Inc. v. United States*, 125 Fed. Cl. 493 (2016). In dismissing portions of ITCA's initial complaint the court examined the government's

legal obligations under the Arizona-Florida Land Exchange Act (the "Act")[1]; 25 U.S.C. § 162a; and the American Indian Trust Fund Management Reform Act of 1994, Pub. L. No. 103-412, 108 Stat. 4239 (1994) (the "Trust Fund Reform Act").  In that same decision, the court also addressed related ongoing district court litigation brought by the government against a private corporation to enforce provisions of the Act and the agreements entered into under that Act.  *United States v. Barron Collier Co.*, no. CV-14-00161-PHX-PGR, 2016 WL 3537802, (D. Ariz. June 29, 2016).  The government sued Barron Collier Co. ("Collier") for failing to abide by an agreement to make certain payments required by the Act under an agreement Collier signed with the government.  The district court litigation has since ended and under the terms of a settlement reached in the district court litigation, approximately $48 million has been paid into trust accounts for the benefit of the plaintiffs in this litigation ("settlement payment").  The plaintiffs in this case contend that the $48 million payment has not resolved their dispute with the United States and have filed this Second Amended Complaint.[2]

In its second amended complaint, ITCA renews its claims for breach of trust in connection with the government's alleged failure to meet certain trust obligations under the Act.  The government has moved to dismiss ITCA's claims in its Second Amended Complaint for lack of jurisdiction and for failure to state a claim for relief.  For the reasons set forth below the government's motion is **GRANTED-IN-PART** and

---

[1] The Arizona-Florida Land Exchange Act was Title IV of the Arizona-Idaho Conservation Act of 1988, Pub. L. No. 100-696, 102 Stat. 4571, 4577-93 (1988).
[2] During oral argument the government explained that as part of the settlement with Collier the government received $16 million in cash, $18.5 million from the sale of the Indian School Property, and $13.5 million from the Annuity.  Oral Argument at 14:01:00-14:01:30.

**DENIED-IN-PART**.

## I.    Background Facts

### A.    The Arizona Florida Land Exchange Act

As discussed in more detail in the court's initial decision, ITCA's complaint

stems from the government's alleged failure to meet its trust obligations under the

Arizona-Florida Exchange Act.  The following facts are taken from plaintiff's Second

Amended Complaint and are not disputed.

In 1985, the United States Department of the Interior ("DOI") offered land –

roughly 100 acres – in the heart of central Phoenix, Arizona to the Collier in exchange

for land Collier owned in Florida and that DOI wanted for a wildlife refuge.  Second

Am. Comp. at ¶¶ 20-22.  The Arizona land that DOI exchanged had been the site of the

Phoenix Indian School ("School"), a federal Indian boarding school that since 1891 had

served primarily Arizona Indian tribes.[3]  DOI had, however, determined that the School

was no longer needed and should be closed.  *Id*. at ¶¶ 15-18 and 23-26.  On May 15,

1988, DOI and Collier entered into a Land Exchange Agreement ("Exchange

Agreement") that required congressional approval.  *Id*. at ¶¶ 36-41.

At the time of the exchange, the School property was worth $34.9 million more

than the Florida land owned by Collier, and the ITCA urged Congress to require that if

the School was closed and the land exchanged, the land value differential be placed into

a trust fund for the education of Arizona Indian tribes who had used the school in the

---

[3] The Ninth Circuit noted in 1995 that ITCA had "no interest in the School Property, which was owned and controlled by the United States government. *Inter Tribal Council of Az. v. Babbitt*, 51 F.3d 199, 203 (9th Cir. 1995).

past.  *Id.* at ¶¶ 28, 34, 38-39, 40-41, 43, 48.  Congress, in response, passed the Act which

is the subject of this litigation.  The government does not dispute that "a key aim of [the

AFLEA was] the funding of Indian education." *Id.* at ¶ 71; *see also id.* at ¶ 217, *citing*

Order at 17, 20, *United States v. Barron Collier Co.*, No. 2:14:cv-00161-PGR (D. Ariz.

July 7, 2016) (ECF No. 188) (Second Am. Compl., Ex. 3).  As enacted, the Act provided

for the $34.9 million differential to be paid as Trust Fund Payments "to the United

States … for deposit" into two separate Trust Funds established by the Act for the

benefit of Arizona Indian tribes.  Arizona-Idaho Conservation Act of 1988, Pub. L. No.

100-696, § 401(19), 102 Stat. 1988.  The Act provided that ITCA member tribes as of

January 1, 1988 are to receive 95% of the land value differential in the Arizona

InterTribal Trust Fund ("AITF" or "Trust Fund"), and that the Navajo Nation will

receive the remaining 5% in a separate trust.  *Id.* at §§ 401(11) and 405(e)(2).

Under the payment scheme established in the Act, Collier was given the option of

paying the full amount owed either as a lump sum or in annual installments over a

period of 30 years with a final balloon payment of $34.9 million.  Second Am. Compl.

at ¶ 44.  Collier selected the annual payment option.  *Id.* at ¶ 84.  Under the legislation,

Collier was obligated to make (1) "30 annual payments equal to the interest due" on the

$34.9 million, and that "[t]he interest rate to be used in determining the interest due" on

the annual payments be not "lower than 8.5 percent or higher than 9.0 percent," and (2)

payment of the $34.9 million at the time of the last annual payment.  Arizona-Idaho

Conservation Act of 1988, Pub. L. No. 100-696, §§ 403(b) and 403(c)(5), 102 Stat.

1988; Second Am. Compl. at ¶ 45.

With the annual payment option, the Act required DOI to execute a Trust Fund

Payment Agreement ("TFPA") with Collier "pursuant to which such annual payments

will be made." Arizona-Idaho Conservation Act of 1988, Pub. L. No. 100-696, §§

403(b) and 403(c)(5), 102 Stat. 1988. Additionally, with the annual payment option, the

Act required "the Secretary of the Treasury" to "hold in trust the security provided in

accordance with the" TFPA. *Id.* at § 405(c)(2).

### B.     The Trust Fund Payment Agreement and Collier's Default

The government and Collier negotiated and executed the TFPA and several

related documents, including a Deed of Trust, a Promissory Note, and an Annuity.

Second Am. Compl. at ¶¶ 119-133. [4]  The Deed of Trust contains the definition of the

Trust Estate, and this Trust Estate, along with the Annuity, secured the Promissory Note

executed by Collier for the Trust Fund Payments in full. *Id.*

The Trust Estate originally consisted of: (1) 15 acres of the remaining Phoenix

Indian School property retained by Collier after it exchanged with the City of Phoenix

---

[4] In October 1992, ITCA sued to enjoin the United States from entering into the TFPA with Collier. *Inter-Tribal Council of Az., Inc., v. Lujan,* No. 2:92-cv-01890-SMM (D. Ariz. 1992) (attached to the Second Amended Complaint as Ex. 24) (1992 ITCA Complaint); Second Am. Compl. at ¶¶ 152-156. In that suit, ITCA alleged that the security obtained by the United States under the TFPA constituted "a violation by the Secretary under the terms of the [Act] which requires that the payment of all amounts due be adequately collateralized at the time of closing." 1992 ITCA Comp. at ¶¶ 39-40; Second Am. Compl. at ¶¶ 155-56. ITCA sought to enjoin the Secretary from agreeing to inadequately collateralize the trust fund payments. 1992 ITCA Compl.; Second Am. Compl. at ¶ 156. The district court denied relief, finding that "the Secretary's decisions regarding the adequacy of the collateral . . . are precluded from judicial review under subsection 402(h) of the [Act]." Second Am. Compl. at ¶ 157. The Ninth Circuit affirmed the district court's dismissal for lack of subject-matter jurisdiction and failure to state a claim on the grounds that "the actions of the Secretary are precluded from judicial review." *Inter-Tribal Council of Az., Inc. v. Babbitt*, 51 F.3d 199, 200 (9th Cir. 1995); Second Am. Compl. at ¶ 161.

other Indian School land for development rights in two Downtown Phoenix lots and (2) liens on the development rights in the Downtown lots. *Id*. at ¶¶ 135-36. The government also agreed in the Deed of Trust that upon Collier's request, the government is required to release the liens so long as "the value of the remaining security 'still exceeds 130% of a defined Release Level Amount.'" *Id.* at ¶ 139. Another provision of the Deed of Trust provided that if the remaining unreleased security fell below 130% of the Release Level Amount, Collier would add sufficient funds to the Trust Estate so that the security equaled at least 130% of the Release Level Amount.[5] *Id.* at ¶ 141. Numerous terms in the TFPA and related documents provided that Collier's obligations were "nonrecourse" against Collier personally, and that resort for payment of such obligations were to be made solely *in rem* against the Trust Estate. *Id.* at ¶¶ 145-148.

Beginning in 1997, Collier made 15 annual payments of $2,966,000 to the United States, and 15 annual payments into the Annuity. *Id.* at ¶¶ 163-164. Within a year of beginning to make payments, and again, at the ten-year mark of making payments, Collier requested releases of the Downtown Lot liens. The government granted both requests. *Id.* at ¶ 172. This left 15 acres of the former Indian School land in the Trust Estate to secure the Trust Fund Payment obligation. *Id*. at ¶ 178.

Around the time of the second lien release in 2008, the United States economy

---

[5] Pursuant to Section 6.2(a) of the Deed of Trust the "Release Level Amount" is "(i) the unpaid principle plus accrued interest on the Promissory Note [$34.9 million], less (ii) the value of the United States Government-backed Securities and Deposited Monies held in the Trust Estate, and further less, after the expiration of two years from the Closing Date . . . (iii) the fair value, at the time of the calculation, of the Annuity." Thus per the terms of the Deed of Trust the level of security never was intended to cover the 30 years of annual payments of $2.9 million in interest payments but rather only sought to secure the $34.9 million payment for the School property.

suffered a significant recession which caused property values, including those in

Phoenix, to decline. *Id.* at ¶ 179. The government did not at that time take any action to

determine whether sufficient security remained in the Trust Estate. *Id*. at ¶¶ 180-182.

The Deed of Trust requires that, when the value of the Trust Estate no longer represents

sufficient security, Collier must substitute security in the form of U.S. Government-

backed Securities.  After 2011, Collier stopped making annual payments. *Id.* at ¶ 190.

On January 7, 2013, Collier gave written notice to the government that it would no

longer be making any additional payments. *Id.* at ¶194.  The government determined

that Collier was in default and wrote Collier that the security level was deficient. *Id*. at ¶

196.  In March 2013, the United States shared this information with ITCA. *Id*. at ¶ 198.

### C.     The Government's Litigation Against Collier and Settlement

In January 2014, the government sued Collier in the United States District Court

for the District of Arizona ("district court") seeking specific performance of the Deed of

Trust's supplemental security provisions to address what the government characterized as

"grossly" insufficient security. *Id.* at ¶ 202.  The government also sought the unpaid

annual payments that Collier had not made for the years 2012, 2013, 2014, and 2015. *Id*.

at ¶ 209. According to Collier, when it stopped making payments, its remaining

obligations consisted of another $44,497,500 in interest payments (15 annual payments)

and $22 million in remaining principal, for a total of approximately $66.5 million through

the end of 2026. *Id.* at ¶ 203.  As of July 22, 2016, the value of the Annuity was

$13,452,569. *See* Joint Status Report, at 4, *U.S. v. Collier*, (ECF No. 191) (attached as

Exhibit 31 to the Second Amended Complaint).  The value of the Indian School land was

appraised at $25 million in September 2015. Second Am. Compl. at ¶ 206.

The district court agreed with the government that the Deed of Trust imposed an ongoing duty on Collier to add government-backed securities to the Trust Estate when the fair value of the Trust Estate fell below 130% of the Release Level Amount. *Id.* at ¶ 215; *United States v. Barron Collier Comp.,* No. CV-14-00161-PHX-PGR, 2016 WL 3537802 at *9 (D. Ariz. June 29, 2016). The court further agreed this duty is enforceable and that the United States is entitled to specific performance of the duty as a matter of law. *Id.*; Second Am. Compl. at ¶ 218.  The court, *inter alia*, ordered Collier to  supplement  the Trust  Estate  with  government-backed  securities  in  the  amount  of  "(a) $20,452,281.00 and (b) $10,565.00 multiplied by the number of calendar days between July 22, 2016 and the date of performance." Second Am. Compl. at ¶ 220.[6]

Eleven months later, in July 2017, the government and Collier reached and executed a settlement in the district court litigation. *Id.* at ¶ 221.  In August 2017, the government reported to this court that the Collier "settlement has a projected gross recovery of $54.5 million, consisting of $16 million in cash, $13.5 million in an annuity, and land in Phoenix with a 2015 appraised value of $25 million." *Id*. at ¶ 226. According to Statements of Account received by ITCA from Interior's Office of the Special Trustee ("OST"), on or about July 26, 2017, the $16 million was placed and held

---

[6] In a Joint Status Report filed in July 2016, the United States stated that since the district court had expressly acknowledged "that Collier's collateral maintenance obligation is a continuing one, Collier's present collateral maintenance obligation as of July 22, 2016 is $20,452,281."  Second Am. Compl. at ¶ 219.

in an unsegregated "Collier Settlement Account" (*i.e.*, a joint account for both ITCA and the Navajo Nation) and was invested in overnight U.S. Treasuries. *Id*. at ¶¶ 227-30. OST Statements of Account for the Collier Settlement Account also show deposits representing partial maturations of the Annuity. *Id*. at ¶¶ 240-41. In March 2018, the government sold the 15 acre Indian School property via online auction for $18.5 million. *Id*. at ¶¶ 242-44. The government deducted the administrative costs of this sale in the amount of $77,902.00, from the sale price. Def.'s Mot. to Dismiss Second Am. Compl. ("Mot. to Dismiss") at 9. The total actual gross recovery from the Collier settlement thus is roughly $48 million ($16 million + $13.5 million + $18.5 million).[7] *Id.*

### D.   The Procedural History and Present Posture of the Case

As noted above, ITCA filed the pending suit against the United States in 2015. The government filed a motion to dismiss ITCA's initial complaint, which the court granted-in-part and denied-in-part on February 22, 2016. *Inter-Tribal Council of Az., Inc. v. United States*, 125 Fed. Cl. 493 (2016). In its opinion, this court dismissed Claim I of ITCA's initial complaint regarding ITCA's allegation that the Act established a fiduciary duty on the government to make payments into the Trust Fund if Collier failed to do so. The court held that although "[t]he Act expressly requires Collier to make payments to the government and requires the government to collect those payments and deposit a portion of the payments into the AITF . . . [t]he Act does not . . . impose any obligation on the government to make payments if Collier fails to make payments." *Id.*

---

[7] During oral argument the government's counsel noted that the total amount of money that will have been deposited into ITCA's Trust fund is $88 million. Oral Argument at 14:01:00-14:02:00

at 501.  With regard to Claim II of ITCA's initial complaint, regarding the government's alleged breached of its fiduciary duties under the Act for failing to hold and maintain sufficient security, this court held that it had jurisdiction because the Act required the government to ensure that there was adequate security to cover Collier's payment obligations. *Id.* at 503.  The court also held that with regards to the portion of Claim II in the initial complaint where ITCA alleged a breach of trust based on the government's release of liens placed on Collier's property in 1998 and 2007 may be barred by the six-year statute of limitations but that the statute of limitations issues were tied to the merits of the claim and thus could not be dismissed at that stage of the proceedings.  *Id.* Finally, with regard to Claim III of ITCA's initial complaint, ITCA's allegation that the government failed to meet its fiduciary duties under the Act and other statutes to invest the funds held in trust prudently, the court held that "the complaint does not allege any facts to show that the government breached" its duty to invest prudently and that "the ITCA does not allege any facts to show that the government has not accounted properly and fully for the AITF funds." *Id.* at 505.  Thus, the court dismissed Claim III of ITCA's initial complaint for failure to state a claim pursuant to Rule 12(b)(6).

Subsequent to the court's decision granting-in-part and denying-in-part the government's motion to dismiss ITCA's initial complaint, ITCA filed its First Amended Complaint.  (ECF No. 34).  The government moved to dismiss the First Amended Complaint under Rules 12(b)(1) and (6).  (ECF No. 35).  While the motion to dismiss was pending, the court ordered supplemental briefing on the status and relevance of the

pending settlement between the United States and Collier in the United States District Court for the District of Arizona.  (ECF No. 40).  Following supplemental briefing and notice to the court that the United States had settled its suit against Collier, the court conducted a status conference on August 30, 2017.  The court rejected ITCA's First Amended Complaint, terminated the government's motion to dismiss ITCA's First Amended Complaint, and gave ITCA until October 30, 2017 to file a second amended complaint which would include only the claims that survived following the district court settlement with Collier.  (ECF No. 48).  The case was then referred to this court's mediation program and stayed pending mediation.  (ECF No. 52).

After mediation proved unsuccessful, ITCA filed the subject Second Amended Complaint.  (ECF No. 58).  Stripped to its essence, ITCA's Second Amended Complaint is based on ITCA's contention that the government is liable for breach of trust because in the government's settlement with Collier, the government did not seek or obtain all 30 years of interest payments together with the guaranteed $34.9 million at the end of that period.  Claim I alleges that the United States breached the Act by failing to obtain and maintain sufficient security at various times throughout the life of the Trust on the grounds that the amount of security obtained from Collier in 1996 was not sufficient to cover the full amount of what Collier was obligated to pay through 2026.  Second Am. Compl. at ¶¶ 254-68.  Claim II alleges a breach of trust based on the government's alleged failure to collect and deposit or make up the trust payments that the Act required Collier to make.  *Id.* at ¶¶ 269-75.  In Claim III, ITCA alleges a breach of trust for

failure to prudently invest Trust money.  *Id.* at ¶¶ 276-81.  This claim contains allegations that the United States failed to prudently invest the trust funds throughout the term of the trust, including the $16 million in cash it recently received from the Collier district court settlement.  *Id.* at ¶ 279.

The government has moved to dismiss the Second Amended Complaint on jurisdictional grounds under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  Oral argument on the government's motion was heard on October 11, 2018.

## II.    DISCUSSION

### A.    Background Legal Principles and Standard of Review

It is well-settled that this court's jurisdiction over breach of trust claims is premised on the Tucker Act, 28 U.S.C. § 1491(a)(1), and the Indian Tucker Act, 28 U.S.C. § 1505.  *United States v. Mitchell*, 445 U.S. 535, 538-39 (1980) and *United States v. Navajo Nation,* 556 U.S. 287, 290 (2009) (*Navajo Nation II)*.  However, because neither of these Acts create any substantive money-mandating rights against the United States, the source of such money-mandating rights must be found in a separate, independent statute.  *Navajo Nation II*, 556 U.S. at 290.  As the Federal Circuit explained in *Adair v. United States,* 497 F.3d 1244 (Fed. Cir. 2007):

> If a trial court concludes that the particular statute simply is not money-mandating, then the court shall dismiss the claim for lack of subject matter jurisdiction under Rule 12(b)(1). If, however, the court concludes that the facts as pled do not fit within the scope of a statute that is money-mandating, the court shall dismiss the claim on the merits under Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

497 F.3d at 1251 (citations omitted).

In ruling on a motion to dismiss pursuant to Rule 12(b)(1), the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). "When a federal court reviews the sufficiency of a complaint . . . its task is necessarily a limited one." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Specifically, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.*

"When considering whether to dismiss an action for failure to state a claim [under 12(b)(6)], the court must assess whether 'a claim has been stated adequately' and then whether 'it may be supported by [a] showing [of] any set of facts consistent with the allegations in the complaint.'" *Brocade Commc'n Sys. v. United States,* 120 Fed. Cl. 73, 78 (2015) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 563 (2007)). "The court must accept all factual allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555-56). The "factual allegations must be substantial enough to raise the right to relief 'above the speculative level.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). "[T]he complaint must contain facts sufficient to 'state a claim that is plausible on its face.'" *Martin v. United States*, 96 Fed. Cl. 627, 630 (Fed. Cl. 2011) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation

omitted).  The plausibility standard is not a probability requirement, but is more than a

sheer possibility. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

> **B.**     **The Court Lacks Jurisdiction Over Portions of Claim I of the Second Amended Complaint and for Remaining Portions of Claim I, ITCA has Failed to State a Claim.**

As noted, at the heart of ITCA's Second Amended Complaint is its legal

contention that by agreeing to allow Collier to pay $2.9 million per year for 30 years in

interest payments  and to pay the $34.9 million lump sum payment at the end of those 30

years, the government had a trust obligation under the Act to ensure that the Trust would

receive the full amount owed at the end of the 30 years and that the government would

be liable for the difference in what was paid by Collier and what was owed if Collier

failed to fulfill its obligation.

In Claim I, ITCA argues that the government breached its trust responsibility by

failing to secure with sufficient security the full payments to be made by Collier under

the Act and thus the government must pay the difference between what Colliers paid and

owed into the Trust Fund had all payments, including all remaining annual payments,

been made.  Specifically, ITCA claims it is entitled to the difference between the $48

million paid into the Trust Fund from the settlement with Collier and the amount it

would have received if the remaining 15 annual payments of $2.9 million were paid

along with the lump sum of $34.9 million.

ITCA argues that there are three instances where the government failed to ensure

that there was sufficient security as required by the Act.  First, ITCA maintains that the

government initially failed to ensure that the government had adequate security for the

entire amount of the trust fund obligations through the 30 year period, when it negotiated the TFPA in 1992.  Second Am. Compl. at ¶¶ 257-59. Second, ITCA argues that the government improperly granted Collier's 1998 and 2007 requests for a partial release of the liens without securing sufficient security.  *Id.* at ¶¶ 260-62.  Third, and finally, ITCA maintains that Collier's default in 2013 on its payment obligations was the result of the government's failure to ensure that there was adequate security. *Id.* at ¶ 263.

The government argues that Claim I must be dismissed on the grounds that ITCA's Claim I is barred by the six-year statute of limitations governing actions for breach of trust.  28 U.S.C.§ 2501 provides that "[e]very claim of which [this court] has jurisdiction shall be barred unless the petition theron is filed within six years after such claim first accrues."  This court's six-year statute of limitation applies to "Indian tribes in the same manner as against any other litigate seeking legal redress or relief from the government."  *Hopeland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576 (Fed. Cir. 1988).  "It is well established that statutes of limitations for causes of action against the United States, being conditions of the waiver of sovereign immunity, are jurisdictional in nature." *Martinez v. United* States, 333 F.3d 1295, 1316 (Fed. Cir. 2003). "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Id.* at 1303 (citation omitted).

The government argues that ITCA's claim that the government failed to secure sufficient security in the TFPA per the requirements of the Act when the land exchange

closed in 1996 is time barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501.  The government notes that ITCA knew the dollar value of the security set in the TFPA and related documents at the time those documents were executed and that the security did not cover all the value of all 30 annual interest payments of $2.9 million and the principal of $34.9 million.  Indeed, the government argues that ITCA had sued to stop the government from entering in its agreement with Collier because the ITCA believed that the security requirement was inadequate.  *See* fn. 4.  The government makes the same statute of limitations argument with regard to the other two portions of ITCA's Claim I involving the government's decisions in 1998 and 2007 to allow Collier to release the liens to allow for the sale of certain properties that were held as security, arguing that these allegations are also time-barred because government authorized those actions more than six-years before ITCA sued the government in this action for breach of trust.

ITCA argues, in response, that no portion of Claim I is time-barred because the government had an on-going duty to ensure that Collier maintained adequate security.  ITCA argues because the government has continually failed to ensure that there is adequate security up to and including the past six-years, Claim I is not time-barred.  In support of this contention, ITCA relies on this court's decision in *Onega v. United States* 91 Fed. Cl. 629 (2010).  In *Onega*, this court found that the government's failure to abide by a regulatory obligation to both enforce and monitor a lease of an Alaska Native allotment constituted an ongoing breach rather than a single event and thus the plaintiff could recover for damages up to six years before the suit was filed in accordance with

the statute of limitations imposed by 28 U.S.C. § 2501. *Id.* at 647.  ITCA argues that the

statutory obligation imposed by the Act and enumerated in the TFPA to maintain

sufficient security was an ongoing obligation and thus their claim is not barred by the

statute of limitations.

Additionally, ITCA argues that even if the continuing claims doctrine outlined in

*Onega* does not apply to the government's obligation to maintain sufficient security, the

claim should not accrue until March 2013 at the earliest.  ITCA maintains that pursuant

to the Federal Circuit's decision in *Shoshone Indian Tribe of Wind River Reservation,*

*Wyo. v. United States*, a cause of action for a breach of trust only accrues when the

trustee repudiates the trust and the beneficiary has knowledge of that repudiation.  672

F.3d 1021, 1031 (Fed. Cir. 2012).  Specifically, ITCA argues that unlike the tribe in

*Shoshone*, ITCA was not involved in the acquisition or maintenance of the Trust Fund

secuirty and did not have either actual knowledge or any reasonable way of knowing

that the Government had failed to secure sufficient security until it was informed by the

government in March 2013. *Id.* at 1031-32.

The court agrees with the government, that to the extent ITCA is claiming the

initial security requirements imposed on Collier by the TFPA were not sufficient to

cover the full amount owed by Collier in the event of default, i.e. the 30 annual

payments of $2.9 million and the final lump sum payment of $34.9 million, the claim is

barred by the six-year statute of limitations.  ITCA needed to challenge the adequacy of

the government's agreements with Collier regarding the amount of security needed to

cover Collier's payment obligation within six years of when the amount was set.  ITCA

did file a law suit in 1992 challenging the security requirements under the TFPA.[8]  (ECF No. 58, Ex. 25).  Thus, ITCA has known about the security requirements since the inception of the TFPA.  Additionally, the court finds that this allegation is not similar to the one addressed by the court in *Onega,* because this portion of ITCA's Claim I is based on a challenge to the establishment of the obligation and not a claim based on the continuing violation of that obligation.  Because ITCA clearly knew about the terms of the TFPA and the amount of security that Collier was required to hold more than six years before it filed this lawsuit, this portion of Claim I is time-barred.

As to the other portion of Claim I, that is ITCA's claim that the government breached its trust obligation by failing to ensure that Collier maintained sufficient collateral as required by the Deed of Trust when the collateral amount fell below 130% of the Release Level Amount when it released liens in 1998 and 2007 as well as when Collier defaulted in 2013, the court finds this portion of Claim I is not time barred but must be dismissed for failure to state a claim.

This court previously held in *Inter-Tribal Council of Az. Inc* that the Act does not impose upon the government the obligation to make any payments if Collier fails to pay, but the Act does impose on the government a duty to ensure that Collier fulfills the security requirements as provided for in the Deed of Trust. 125 Fed. Cl. at 502.  Thus, the government had responsibility for ensuring that Collier had adequate security as required under the Deed of Trust.  The government, however, fulfilled that obligation

---

[8] Although the TFPA was signed in 1992, "the transaction did not finally close until four years later, in December 1996." *Barron Collier Company,* 2016 WL  3537802 at *2.

when it sued Collier in federal district court for the amounts owed to make up the 130%

of the Release Level Amount, i.e. the missed four annual payments of $2.9 million

before Collier defaulted and the lump sum amount of $34.9 million minus the amount in

the annuity and remaining property held in security.  The district court found that

Collier, per the terms in the Deed of Trust, was required to make up the difference

between the collateral provided by Collier and the 130% Release Level Amount and

ordered Collier to do so.  *United States v. Barron Collier Co.*, No. CV-14-00161-PHX-

PGR, 2016 WL 3537802 at *12 (D. Ariz. June 29, 2016).  Eventually, the district court

case was settled with a court-approved settlement.

The court finds that neither the Act nor the Deed of Trust required the

government to do anything more than it did in filing suit in district court to obtain the

additional security from Collier.  Under its initial trust agreement with Collier, the

government's right to recover was limited to the amounts Collier held as security.

Having sued Collier to obtain additional security to meet the 130% of the Release Level

Amount as mandated by the trust agreement, the government fulfilled its trust

obligations. Therefore, ITCA has not stated a claim for relief in Count I for a breach of

trust.

### C.     ITCA has Failed to State a Claim in Claim II of its Second Amended Complaint.

In moving to dismiss Claim II of ITCA's Second Amended Complaint, the

government argues that ITCA has failed to state a claim for breach of trust on the

grounds that the government does not have a trust obligation to make up any payments

Collier fails to make and that by suing Collier to raise the amount of security to 130% of the Release Level Amount and placing the payments in Trust, together with selling the School property, the government has fulfilled its obligations under the Act.  ITCA argues that the government had a trust obligation to collect all 15 remaining annual payments from Collier under the Act and that by seeking to collect only four of the remaining fifteen payments, the government breached its duty and is required to make up the difference.

The court agrees with the government that ITCA's Claim II is nothing more than a repackaging of Claim I in its initial complaint which this court dismissed on the grounds that "[t]he Act does not . . . impose any obligation on the government to make payments if Collier fails to make payments."  *Inter-Tribal Council,* 125 Fed. Cl. at 501. In this connection the court finds the plaintiff's counsel's concession during oral argument that the Act does not address the government's liability in the event of a default by Collier on interest payments is telling.  Oral Argument at 16:53:00-16:53:50. The Act did not expressly identify any security requirements and the Deed of Trust, which was entered into pursuant to the Act, only imposed on the government the obligation to ensure that Collier held sufficient security to meet the 130% of the Release Level Amount in the event that a lien was released. The government did not ignore this obligation because it sued Collier to force Collier to provide sufficient security pursuant to the Deed of Trust.  The government was not required to do more and is not liable for any deficiencies in Collier's annual interest payments.  Therefore, this claim must be dismissed for failure to state a claim upon which relief can be granted.

**D.    The Court Lacks Jurisdiction Over Claim III of the Complaint to the Extent it Claims a Breach of The Government's Fiduciary Obligations to Invest Prudently ITCA's Trust Fund Going Back More Than Six Years.**

Finally, in Claim III ITCA argues that the government has violated its trust obligations by failing to prudently invest ITCA's allocation of the 15 annual payments of $2.9 million received from Collier and the $16 million in cash that the government received as part of its settlement with Collier.  Specifically, ITCA argues that by investing in short term Treasury bonds rather than longer term investment vehicles that have higher interest rates, the government has failed to prudently invest the Trust Funds.

The government argues that this claim should be dismissed for lack of jurisdiction to the extent ITCA is complaining of the government's investments decisions made more than six years prior to April 2, 2015, when ITCA filed this lawsuit, because the claim is barred by the six-year statute of limitations provided for in 28 U.S.C. § 2501.  The government maintains that ITCA has been on continual notice of the government's investment of the trust funds because by its own admission the OST has provided ITCA with Asset and Transaction Statements/Statements of Account since October 1, 1998.  *See* Second Am. Compl. at ¶¶ 168-69; Pl.'s Resp. at 39.  As such, the government argues that this court does not have jurisdiction for the portion of Claim III that involved investment decisions that took place more than six-years prior to the filing of this lawsuit.

To the extent that any portion of Claim III is not barred, the government argues that the remaining portion of Claim III should be dismissed for failure to state a claim because ITCA has failed to point to any financial impropriety by the government and

has only offered conclusory allegations that depositing trust funds in short term Treasury bonds is a trust violation.   The government notes, that this court previously dismissed a similar claim made by ITCA in their initial complaint because it did not allege sufficient facts to state a claim that the government had breached its investment and accounting duties.  *Inter-Tribal Council*, 125 Fed. Cl. at 505.  In this connection, the government notes that the court in dismissing ITCA's initial claim directed ITCA to "seek an accounting in federal district court to identify any breach of the government's investment and accounting duties and proceed with an action if it discovers any financial impropriety[,]" which ITCA has never sought.  *Id.*

In response, ITCA argues that it has alleged sufficient facts for this court to draw a reasonable inference that the government is liable for underinvestment of the money deposited into the Trust Fund.  ITCA argues that in this court's February 22, 2016 decision granting-in-part and denying-in-part the government's motion to dismiss ITCA's original complaint, the court found "that the plain language of the [Act] requires the government to 'invest in accordance with the requirements of' section 405(c)(1) of the Act if it chooses to invest a portion of the Trust Income not used by the Secretary in any year.'" *Inter-Tribal Council,* 125 Fed. Cl. at 505.  ITCA relies on several decisions of this court where the government was found liable for underinvestment of funds pursuant to 25 U.S.C. §162a.  *Jicarilla Apache Nation v. United States*, 112 Fed. Cl. 274 (2013); *Chippewa Cree Tribe, et al. v. United States*, 69 Fed. Cl. 639 (2006).  In *Jicarilla Apache Nation*, this court found that the government had an obligation to prudently invest the funds held in trust and that the government had failed to do so when it invested a large amount of the trust funds in short-term low interest yielding

investments. 112 Fed. Cl. at 300.  Similarly in *Chippewa Cree Tribe*, the court found

that the government was obligated to prudently invest funds held in trust for the benefit

of the Indian Tribes designated as the beneficiary.  69 Fed. Cl. at 662.  In *Chippewa*

*Cree Tribe*, the court also found that Chippewa Cree Tribe's claim was not barred by the

six-year statute of limitations because the tribe had not been provided a "meaningful

accounting" and thus the claim had not accrued prior to the filing of the law suit.  *Id.* at

664.  Based on these precedents, ITCA argues that its complaint with regards to Claim

III is sufficient to state a cognizable claim because the government has failed to

prudently invest the trust funds by investing in low-yielding investment vehicles.  ITCA

also argues that no portion of Claim III is barred by the six-year statute of limitations

because ITCA has never been provided a "meaningful accounting" from which it could

have known of the government's underinvestment decisions.

The court agrees with the government that to the extent that ITCA's Claim III

challenges investments made six years prior to April 2, 2015, those allegations must be

dismissed pursuant to Rule 12(b)(1) because they are outside the six-year statute of

limitations set forth in 25 U.S.C. § 2501.  ITCA's argument that it never received a

meaningful accounting is without merit.  Unlike the plaintiffs in *Chippewa Cree Tribe*,

ITCA has received regular reports on how the trust funds have been invested since

October 1, 1998.  As such, ITCA has had notice on how the government invested the

unspent trust funds. In its complaint ITCA acknowledges that the accounting statements

show "the investments made by OST" for the trust and "show that the investment

portfolio's maturity structure selected by OST for the [trust funds] was too short."

Second Amend. Compl. at ¶¶ 169-70.  ITCA has acknowledges that it has received

accounting statements since the first payment made by Collier in 1998.  The court thus

finds that to the extent that Claim III encompasses a claim for a breach of trust based on

the government's failure to prudently invest trust funds more than six years prior to the

filing of this law suit, the claim is barred by the six-year statute of limitations.

The court finds that with regards to ITCA's claim that the government has failed

to prudently invest the trust funds in the six years prior to filing suit because it has

invested the funds in short-term low interest yielding investment vehicles within the last

six years, ITCA has alleged sufficient facts to establish a claim upon which relief can be

granted.  This court on numerous occasions has found that the government can be liable

for failing to prudently invest in accordance with  25 U.S.C. §162a[9] when it has invested

in low-yielding short-term investment vehicles.  *See Jicarilla Apache Nation*, 112 Fed.

Cl. at 289; *Chippewa Cree Tribe*, 69 Fed. Cl. 639 (2006); *Osage Tribe*, 72 Fed. Cl. 629

(2006).  Furthermore, in *Mitchell v. United States*, 463 U.S. 206, 226 (1983), the

Supreme Court found when a statute or regulations "clearly establish fiduciary

obligations of the Government in the management and operations of Indian lands and

resources, they can fairly be interpreted as mandating compensation by the Federal

government for damages sustained."  In fact, the government acknowledged during oral

argument that ITCA may have a cognizable claim within the statue of limitations with

regards to at least the investment of the trust funds that the government has held from

the 2017 settlement with Collier.  Oral Argument at 16:58:30-16:59:30.  For these

---

[9] 25 U.S.C. §162a provides in relevant part  "[t] he Secretary of the Interior is hereby authorized in his discretion . . .  to withdraw from the United States Treasury and to deposit in banks to be selected by him the common or community funds of any Indian tribe . . .for the benefit of individual Indians."

reasons, the court finds to the extent that ITCA claims a breach of trust based on the government's failure to prudently invest the trust funds going back six years from the filing date of this law suit, ITCA has stated a claim upon which relief can be granted and thus cannot be dismissed.

## CONCLUSION

The court finds that it lacks jurisdiction to hear Claim I of ITCA's Second Amended Complaint due to the six-year statute of limitations and for failure to state a - claim upon which relief can be granted.  The court also finds that it lacks jurisdiction to hear Claim II of ITCA's Second Amended Complaint for failure to state a claim upon which relief can be granted.  Finally, the court finds that it lacks jurisdiction to hear the portions of Claim III which occurred prior to April 2, 2009, due to the six-year statute of limitations.  Accordingly, the government's motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART.**  The parties shall file a joint status report by **November 15, 2018** with proposed next step for resolving this litigation.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge