# In the United States Court of Federal Claims

No. 15-342
Filed: August 1, 2023
NOT FOR PUBLICATION

| |
|---|
| **INTER-TRIBAL COUNCIL OF ARIZONA, INC.,** |
| *Plaintiff*, |
| v. |
| **UNITED STATES,** |
| *Defendant*. |

*Melody L. McCoy*, Native American Rights Fund, Boulder, CO, for the plaintiff.

*Alexis M. Daniel*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for the defendant, with *Dondrae N. Maiden* and *Karen F. Boyd*, Department of the Interior, of counsel.

## MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

In this Indian breach-of-trust case, the plaintiff, Inter-Tribal Council of Arizona, Inc. ("ITCA"), is a nonprofit consortium organization of federally recognized tribes. The U.S. Department of the Interior ("Interior") administers a trust fund for the benefit of the plaintiff, as required by a congressionally ratified land exchange. The plaintiff alleges that the defendant, the United States acting through Interior, breached its fiduciary duties by failing to maintain adequate security in the trust fund. The parties have filed cross-motions for partial summary judgment on this claim.

Three issues raised by the cross-motions have already been decided on the defendant's previous motion to dismiss and may not be relitigated now. First, the defendant is not liable for payments that another party failed to deposit into the trust fund. Second, the fact that Interior, rather than the U.S. Department of the Treasury ("Treasury"), administered the trust is irrelevant. Third, the defendant's successful suit in district court to recover funds owed to the trust does not resolve the plaintiff's claim.

The parts of the plaintiff's claims that remain viable are not fit for resolution on summary judgment. There is a genuine dispute of material fact regarding the value of the trust fund over time relative to the required value of the trust fund. Additionally, the determination of whether

the defendant violated its common-law fiduciary duties requires further factual development and context.

Accordingly, the defendant's motion for partial summary judgment is granted in part regarding the issues that have already been decided in the defendant's favor. The remainder of the defendant's motion for partial summary judgment is denied, and the plaintiff's motion for partial summary judgment is denied in its entirety.

## I.     FACTUAL BACKGROUND[1]

From 1891 until 1990, Interior operated the Phoenix Indian School, an off-reservation elementary and secondary boarding school for Native American children in Phoenix, Arizona, on land owned by the United States. (Pl.'s Statement of Undisputed Material Facts, ECF 137-2 at ¶¶ 3, 32.) In a complicated transaction with Baron Collier Company ("Collier") approved by Congress, the United States traded the land on which the Phoenix Indian school was located ("the Phoenix Indian School property") to Collier in return for land owned by Collier in Florida to establish a wildlife refuge there. *See* Arizona-Florida Land Exchange Act ("AFLEA"), Pub. L. No. 100-696, 102 Stat. 4577, tit. IV (1988).

Because the Arizona land was worth more than the Florida land, Collier had to pay $34.9 million, the value of the difference, to the United States. Collier could pay the differential either as a single lump-sum payment or as 30 annual payments. (Def.'s Statement of Undisputed Material Facts, ECF 130 at ¶¶ 4-5.) The funds the United States received were to be held in trust, with 95 percent of the cash proceeds allocable to the Arizona InterTribal Trust Fund for the benefit of the plaintiff to fund educational and child-welfare programs. *See* AFLEA §§ 401(2), 403(a), 405(c)(2), 405(d), 405(e)(1).[2] If the trust fund payments were made in the form of annual payments, the United States was required to "hold in trust the security provided in accordance with the Trust Fund Payment Agreement [('TFPA')]." *Id.* § 405(c)(2).

Collier elected to pay for the Arizona land in 30 annual installments. (ECF 130 at ¶ 10.) In 1992, the United States and Collier executed the TFPA, which incorporated a Promissory Note and Deed of Trust. (*Id.* at ¶ 12.) The Promissory Note required Collier to pay the United States a "Principal Amount" of $34.9 million, payable in 30 annual payments, into an annuity held by a private bank. Additionally, Collier had to make 30 "Annual Interest Payments" to Interior of $2.9 million per year, which is 8.5 percent per annum on the Principal Amount. (ECF 130-1 at 14; ECF 130-4 at 5; ECF 130 at ¶ 14.)

At the time the TFPA was executed, the Trust Estate consisted of the Phoenix Indian School property owned by Collier and liens on development rights and property interests in

---

[1] This summary of facts does not constitute findings of fact but is simply a recitation of the parties' representations. This summary is abbreviated and recounts only the factual representations relevant to this opinion.

[2] The remaining five percent were allocable for the benefit of the Navajo tribe.

downtown Phoenix that Collier had acquired. (ECF 137-2 at ¶ 86.) The Deed of Trust required the United States to grant Collier a release from any of the liens so long as the value of the collateral remaining in the Trust Estate exceeded 130 percent of a defined Release Level Amount. (ECF 130 at ¶ 24.)

Collier made its required annual payments into the annuity and annual interest payments ("trust fund payments") from 1997 until 2011. (ECF 130 at ¶ 30.) The United States released Collier from some of the liens in the Trust Estate in 1998 and 2007. (ECF 137-2 at ¶¶ 105-06.) In 2011, the United States demanded that Collier add collateral to the Trust Estate after "Collier defaulted on the Trust Fund Payments." (ECF 137-2 at ¶¶ 111-12.) In 2012, Collier did not make the required trust fund payments. Collier notified Interior in 2012 that it did not intend to make any additional payments. (ECF 130 at ¶ 36.)

In 2014, the United States sued Collier in federal district court in Arizona, seeking either specific performance of the requirement that Collier maintain adequate collateral in the Trust Estate or, alternatively, the imposition of a constructive trust on Collier's interests in the properties for which Collier's liens had been released in 1998 and 2007. (ECF 130 at ¶¶ 38-39.)

In July 2017, the United States and Collier executed a settlement agreement with a total estimated recovery by the United States of $54.5 million, comprised of $16 million in cash, $13.5 million in annuity investments, and the Phoenix Indian School property, which was appraised to be worth $25 million. (ECF 130 at ¶ 47.) The General Services Administration sold the Phoenix Indian School property for $18.5 million, however, bringing the total realized value of the settlement to approximately $48 million. (*Id.* at ¶ 50.) Interior holds the cash received from the settlement in trust; Interior also holds the annuity investments in trust and cashes them out and deposits them into the trust as they mature. (*Id.* at ¶¶ 48-49.)

## II.    PROCEDURAL HISTORY

Although this case has a protracted procedural history, only the history relevant to this opinion is recounted here.

The plaintiff filed suit on April 2, 2015—after the United States had sued Collier in district court but before the settlement agreement was executed. (ECF 1.) The parties have engaged in briefing on several motions to dismiss and have attempted to resolve the dispute through alternative dispute resolution. (*See, e.g.*, ECF 10; ECF 24.) The plaintiff's pending complaint alleges three claims for relief, only two of which are relevant to the pending cross-motions. (ECF 58.)

In Claim I of the plaintiff's pending complaint, the plaintiff alleges that the United States failed to require adequate security when negotiating the TFPA; that the United States was required "to hold sufficient security both for the $34.9 million final payment and for all thirty years of $2.9 million annual payments which could not be prepaid;" that the United States' failure to have adequate security in the Trust Estate in 1998, 2007, and 2011 was a breach of trust; that the United States failed to recover from Collier sufficient security; and that Treasury, rather than Interior, should have held the security in trust. (*Id.* at ¶¶ 254-67 (emphasis in

original).)  As relief specific to Claim I, the plaintiff seeks ITCA's allocation of the $34.9 million final payment, all outstanding annual $2.9 million payments, and the difference between the actual return on the recovered $34.9 million principal payment and the statutory minimum rate of return of 8.5 percent.  (*Id.* at ¶ 268.)

In Claim II of the plaintiff's pending complaint, the plaintiff alleges that the defendant breached the trust because it failed to collect payments from Collier, to make the payments to ITCA on Collier's behalf, and to invest the payments on which Collier defaulted.  (*Id.* at ¶¶ 270-74.)  The plaintiff alleges that the United States has "the obligation . . . to make in full the Trust Fund Payments required under the Act for the annual payment method's entire thirty year period."  (*Id.* at ¶ 272.)  As relief for this claim, the plaintiff seeks ITCA's allocation "of the fifteen $2.9 [million] annual payments unpaid beginning in 2012," and the "lost earnings" on those amounts.  (*Id.* at ¶ 275.)

On the defendant's motion to dismiss, Judge Firestone dismissed both Claims I and II.  *Inter-Tribal Council of Ariz., Inc. v. United States* ("*ITCA I*"), 140 Fed. Cl. 447, 460 (2018).  She held that the parts of Claim I regarding the negotiations of the TFPA were time-barred, and the rest of the claim did not constitute a basis upon which relief could be granted because the United States had sued Collier to recover the principal $34.9 million payment and the four missed annual $2.9 million payments.  *Id.* at 455-57.

Claim II was dismissed because the AFLEA does not impose any obligation on the United States to make payments in the event of Collier's default.  *Id.* at 458.  The Deed of Trust "only imposed on the government the obligation to ensure that Collier held sufficient security to meet the 130% of the Release Level Amount in the event that a lien was released."  *Id.* at 458.  Additionally, the "government did not ignore this obligation because it sued Collier to force Collier to provide sufficient security pursuant to the Deed of Trust."  *Id.*  Most crucially, Judge Firestone specifically held: "The government was not required to do more and is not liable for any deficiencies in Collier's annual interest payments."  *Id.*

On the plaintiff's appeal, the Federal Circuit reversed part of the dismissal of Claim I and affirmed the dismissal of Claim II.  *Inter-Tribal Council of Ariz., Inc. v. United States* ("*ITCA II*"), 956 F.3d 1328, 1344, 1346 (Fed. Cir. 2020).

Regarding Claim I, the Federal Circuit held that the dismissal of a "portion" of Claim I had been in error.  *Id.* at 1340.  Section 405(c)(2) of the AFLEA, which requires the United States to "hold in trust the security provided in accordance with the [TFPA]," bestowed a specific fiduciary duty on the United States to maintain adequate security in the Trust Estate for the benefit of the ITCA.  *Id.* at 1341-42.  The Federal Circuit highlighted allegations relevant to this fiduciary duty, including the United States' concession in related litigation that Collier's debt had become under-collateralized when the liens were released, that the United States failed to perform an independent appraisal of the Phoenix Indian School property, that the United States did not demand that Collier substitute security until 2011, and that the United States failed to provide ITCA with timely notice of its decisions to release the liens.  *Id.* at 1342-43.  The Federal Circuit held: "If proven, ITCA's allegations would demonstrate a breach of the Government's fiduciary duty to 'hold in trust the security' against Collier's payment obligations,

4

including the duty to preserve the property held in trust." *Id.* at 1343. The Federal Circuit noted that it was "particularly troubling" that in 2007, only real property remained in the Trust Estate despite the fact that Collier's debt was nonrecourse except against the Trust Estate held in security by the United States. *Id.* The Federal Circuit specified that only the "failure-to-maintain-sufficient-security portion of Claim I" survived. *Id.* at 1344.

The Federal Circuit held, however, that "Claim II fails to state a claim upon which relief can be granted." *Id.* at 1345. The Federal Circuit recited the plaintiff's allegation that the United States had not collected or made any annual or final Trust Fund Payments since 2011 and held that there was no "support in the AFLEA, case law, or otherwise, for the imposition of a duty consistent with this allegation." *Id.* At most, the provisions of the AFLEA cited by the plaintiff imposed a duty on Collier, not the United States. *Id.*

Following the appeal and unsuccessful settlement discussions, the case was transferred to the undersigned. (ECF 122.) The parties filed cross-motions for partial summary judgment on Claim I on March 21, 2023 (ECF 129; ECF 137); response briefs on May 22, 2023 (ECF 138; ECF 140); and reply briefs on July 7, 2023 (ECF 142; ECF 143).[3] Oral argument was held on August 1, 2023.

## III. STANDARD OF REVIEW

Under RCFC 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are inappropriate at the summary-judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## IV. DISCUSSION

The parties have cross-moved for partial summary judgment on Claim I of the plaintiff's second amended complaint. The parties dispute what issues have already been decided and what facts are relevant to the determination of whether the United States has breached its trust obligations as determined by the Federal Circuit.

### A. Issues Already Decided

The parties dispute the impact of the Federal Circuit's decision on Claim I. The parties' arguments raise three issues regarding the impact of the Federal Circuit's decision: (1) whether the defendant can be held liable for any of the outstanding annual $2.9 million annual interest payments; (2) whether the plaintiff has forfeited its claim regarding the management of the Trust

---

[3] The parties have agreed to stay resolution of the plaintiff's still-pending Claim III until Claim I is resolved.

Estate by Interior rather than the Treasury; and (3) whether the defendant's suit against Collier fulfilled its fiduciary duties.

### 1. The Annual Payments

The defendant argues that the Federal Circuit has already decided that the plaintiff cannot recover the unpaid annual $2.9 million payments from the defendant. The plaintiff argues that this portion of its claim was revived by the Federal Circuit's reversal. The intertwined nature of the plaintiffs' claims in the pending complaint and the number of opinions already issued in this case have led to some honest confusion.

Nonetheless, it appears that Judge Firestone's holding that the defendant "is not liable for any deficiencies in Collier's annual interest payments," *ITCA I*, 140 Fed. Cl. at 458, was affirmed by the Federal Circuit. *ITCA II*, 956 F.3d at 1345. Although the plaintiff argued on appeal that the United States was responsible for collecting and paying all required remaining annual payments to ITCA, the Federal Circuit held that no law supported "the imposition of a duty consistent with this allegation." *Id.*

The Federal Circuit's reversal of a portion of Judge Firestone's decision on Claim I must be read consistently with the affirmance of Judge Firestone's dismissal of Claim II. The plaintiff's proposed reading of the Federal Circuit's reversal, however, renders the Federal Circuit's holding inconsistent—if the plaintiff can collect all annual payments under Claim I, the Federal Circuit's decision on Claim II is rendered academic. Even if the defendant were found to have breached its duty to maintain adequate security, holding the defendant liable for annual payments it had no legal obligation to pay would be illogical.

The facts listed by the Federal Circuit as relevant to the viable portion of Claim I support an inference that the annual payments sought by the plaintiff are unrecoverable. The Federal Circuit highlighted the plaintiff's allegations regarding the lack of diversification in the Trust Estate, the defendant's release of liens without performing independent appraisals, and the defendant's failure to demand substitute security, even after the economic downturn caused real estate to depreciate in 2007. *ITCA II*, 956 F.3d at 1342-44. Aside perhaps from incentivizing Collier's breach, these alleged actions have no plausible connection to the defendant's supposed obligation to assume Collier's missed payments upon default. In its pending motion for summary judgment, the plaintiff has failed to demonstrate a connection between the different concepts. Accordingly, the plaintiff is in no way entitled to recover from the defendant the $2.9 million annual interest payments under Claim I.

As support for its argument that its claim for the $2.9 million payments is viable and that it is entitled to summary judgment on that claim, the plaintiff points to a footnote in the Federal Circuit's opinion noting the parties' dispute over "whether the security to be held by the Government was intended to secure all thirty years of required annual interest payments, i.e., Trust Fund Payments, or only accrued interest." *ITCA II*, 956 F.3d at 1340 n.11. The Federal Circuit took "no position on the issue of whether the security to be held by the Government was intended to secure all thirty years of required annual interest payments, as this issue is not material to our present determination, and also because the Court of Federal Claims did not pass

6

on this issue below." *Id.* It was sufficient for the purposes of the appeal that the defendant had conceded that Collier's debt had become "grossly under-collateralized." *Id.*

This footnote cannot serve to revive the plaintiff's claim for the outstanding $2.9 million payments for two reasons. First, the plaintiff's reading of this footnote conflicts with the text of *ITCA II*. In its evaluation of Claim II, the Federal Circuit *did* analyze whether the defendant could be held liable for the $2.9 million annual payments, so that issue *was* "material" to its opinion. *See id.* at 1340 n.11. Additionally, Judge Firestone *had* passed on the issue below and held that the defendant "is not liable for any deficiencies in Collier's annual interest payments." *ITCA I*, 140 Fed. Cl. at 458. Accordingly, the unresolved issue discussed in the footnote is not the issue on which the plaintiff seeks to rely in seeking summary judgment on Claim I.

Second, the plaintiff's argument makes a logical leap. The Federal Circuit has held that the defendant had the legal obligation to hold sufficient collateral in trust to secure Collier's debt. *ITCA II*, 956 F.3d at 1340-41. This holding does not mean that the defendant can be held liable for the underlying debt itself. The plaintiff has failed to demonstrate a connection between the defendant's alleged failure to hold sufficient security and the payments Collier has allegedly failed to make. There is a fundamental difference between the defendant's obligation to hold sufficient collateral in trust to encourage Collier's continued performance and the defendant's supposed obligation to assume all Collier's financial obligations upon Collier's default. Although the former obligation remains a viable part of the plaintiff's claim, the latter supposed obligation lacks legal foundation. The plaintiff's attempt to hold the defendant liable for a third party's obligations is unconnected to its remaining viable claim and therefore has already been dismissed.

Pursuant to the footnote emphasized by the plaintiff, the only liability issue that remains unresolved is the precise amount of security the United States was required to maintain in the Trust Estate. For example, if the collateral should have been sufficient to secure the principal amount and all 30 annual interest payments, the United States should have maintained the Trust Estate at a higher value. If the collateral only needed to secure the annuity and interest payments as they came due, the United States potentially could have maintained the Trust Estate at a lower value.

Nonetheless, the plaintiff's claim to recover the value of all Collier's outstanding $2.9 million annual payments from the defendant has been considered and rejected. The plaintiff cannot recover these payments under the remaining portion of Claim I.

### 2. The Agency-Management Claim

The plaintiff alleges that the facts that the annuity was held at a private bank and the real property was held by Interior is a breach of the requirement that Treasury hold the trust in security. (ECF 58 at ¶ 266.) In short, the plaintiff alleges that placing oversight of the trust in Interior rather than Treasury constituted a breach of the defendant's obligations under AFLEA. The plaintiff asserts this claim in its motion for summary judgment. (ECF 137-1 at 37.)

The defendant argues that because the plaintiff did not pursue this claim on appeal, and only a portion of Claim I remains viable on remand, this claim has been abandoned. (ECF 138 at 33.)

The defendant is correct that the plaintiff's opening brief before the Federal Circuit did not mention this issue. (*See* Brief of Plaintiff-Appellant, *Inter-Tribal Council of Ariz., Inc. v. United States*, Fed Cir., Case No. 19-1758, ECF 10.)

Federal Circuit caselaw "is well established that arguments not raised in the opening brief are waived." *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006). By failing to raise the argument on appeal, the plaintiff has forfeited its claim that management of the trust by Interior and a private bank rather than Treasury violated the AFLEA. The Federal Circuit held that apart from the "failure-to-maintain-sufficient-security portion of Claim I," "the remainder of Claim I . . . should be dismissed." *ITCA II*, 956 F.3d at 1340. This excerpt reflects that the Federal Circuit did not reverse the entirety of Judge Firestone's decision, only a portion. Those portions not reversed remain undisturbed as the law of the case, affirmed on appeal, and may not be reargued or reopened on remand.

Even if the plaintiff's claim over the management of the trust were not waived, the plaintiff must establish standing to pursue this claim. On summary judgment, the plaintiff must "'set forth' by affidavit or other evidence 'specific facts'" that show the elements of standing. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 556 (1991) (quoting Fed. R. Civ. Pro. 56(a)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The plaintiff has not established, with reference to "specific facts," how it was harmed by the fact that Treasury did not hold and manage the Trust Estate. *See Lujan*, 504 U.S. at 556. The lack of injury in fact is dispositive. *See Spokeo*, 578 U.S. at 338. Without the requisite showing of standing, the plaintiff's claim over which agency managed the trust must be dismissed.

In sum, the plaintiff has waived further litigation of its already-dismissed agency-management claim in its pending complaint. Alternatively, that portion of Claim I is dismissed for lack of standing.

### 3. The Settlement

The defendant argues that it is entitled to judgment as a matter of law because it has already sued Collier to recover $48 million for the Trust Estate. (ECF 129 at 26.)

The defendant executed the settlement agreement with Collier on July 18, 2017. (ECF 130-13.) Judge Firestone premised her dismissal of the plaintiff's claims largely on the settlement agreement. *ITCA I*, 140 Fed. Cl. at 457 (holding that the defendant had fulfilled its obligation to maintain adequate security in the Trust Estate when it sued Collier in federal district court).

In its opinion, the Federal Circuit acknowledged the defendant's settlement agreement with Collier in the related case. *ITCA II*, 34 F.4th at 1336-37. The Federal Circuit nonetheless held that other facts, "[i]f proven," "would demonstrate a breach of the Government's fiduciary duty to 'hold in trust the security' against Collier's payment obligations, including the duty to preserve the property held in trust . . . ." *Id.* at 1343.

The Federal Circuit's decision thus implies that facts other than the United States' suit against Collier are also relevant to a determination of whether the United States breached its duty to maintain adequate security in the Trust Estate.

Because those other relevant facts are in dispute, the defendant is not entitled to judgment as a matter of law that it fully discharged the fiduciary duties alleged under Claim I by recovering some of the trust fund payments from Collier.

### 4. Summary

Three main issues raised by the parties on these cross-motions have already been decided in this case. First, the defendant is not liable for Collier's unpaid annual payments. Second, the issue of whether the Trust Estate was managed by Interior and a private bank or by Treasury is forfeited. Third, the defendant will need to show more than its suit against Collier to defeat the plaintiff's remaining viable claim. Reassignment of the case to the undersigned does not present the parties an opportunity to relitigate these issues.

With the goal of finally putting these arguments to rest, a more thorough recitation of which paragraphs of the plaintiff's Claim I remain viable will guide the litigation moving forward.

It is undisputed on the present cross-motions that the plaintiff's allegations regarding the defendant's actions in negotiating the TFPA are time-barred. *See ITCA II*, 956 F.3d at 1344-45. Accordingly, paragraphs 255 through paragraphs 259 of the plaintiff's pending complaint (ECF 58) are dismissed.

In paragraphs 260 through 263, the plaintiff alleges that the defendant failed to maintain adequate security in 1998, 2007, and when Collier defaulted. (*Id.*) These allegations were the subject of much of the Federal Circuit's discussion of Claim I and remain viable. *See ITCA II*, 956 F.3d at 1340-44. These allegations will require further factual development.

In paragraph 264, the plaintiff alleges that the United States failed to recover from Collier sufficient security to meet its Trust Fund obligations in full. This claim is redundant of Claim II, which has been dismissed. As discussed, this allegation forming part of Claim I does not stand. Accordingly, this allegation must be dismissed.

In paragraph 265, the plaintiff alleges that the General Services Administration's deduction of administrative costs from the online sale of the Phoenix Indian School property was a breach of trust. (ECF 58.) Because the Federal Circuit revived only a portion of Claim I regarding the defendant's alleged failure to maintain adequate security, this allegation also did not survive. It is therefore dismissed.

As already discussed, the plaintiff's claim in paragraph 266 over which agency managed the trust must be dismissed.

In paragraph 267, the plaintiff alleges that "until the [AFLEA's] Trust Fund Payments obligations are satisfied in full, the United States' breaches of trust in violation of the [AFLEA] regarding the security are also continuing."  (ECF 58.)  Because it has already been held that the United States has no obligation to pay the trust fund payments on Collier's behalf, this allegation, too, must be dismissed.

As relief for Claim I, the plaintiff seeks three forms of monetary relief: (1) ITCA's allocation of the $34.9 million final payment; (2) ITCA's allocation of the $2.9 million payments that have yet gone unpaid; and (3) ITCA's allocation "of the difference between the actual return on the $34.9 million once it has been recovered in full, and the Act's mandated minimum rate of return of 8.5% on the $34.9 million as of the same time, through the full thirty year annual payment time period."  (*Id.* at ¶ 268.)

Pursuant to the Federal Circuit's holding, the plaintiff is not entitled to recover payments that Collier failed to make from the United States.  Accordingly, the plaintiff's request for the $34.9 million sum and the unpaid $2.9 million payments must be dismissed.  The only outstanding issue remaining on Claim I is whether relief may be available to the plaintiff for the alleged discrepancy on the rate of return to the trust fund.  Resolution of that one remaining issue requires more factual development than the parties have presented on these cross-motions.

### B. Factual Issues Remaining

Narrowing in on the allegations that remain viable, it remains to be determined whether the defendant breached its fiduciary duty to maintain adequate security in the Trust Estate when it released Collier's liens in 1998 and 2007, when the economic downturn occurred in 2007, and when Collier defaulted in 2011.  If the defendant did breach its fiduciary duty to the plaintiff, the quantum of relief available under the one remaining basis for calculating damages must also still be determined.

The plaintiff's surviving claim can be divided into two sub-issues on liability for purposes of these cross-motions: (1) whether the defendant complied with specific express provisions in the Deed of Trust, and (2) whether the defendant maintained an adequate amount of security in the Trust Estate according to common-law principles.

#### 1. The Deed of Trust

The Deed of Trust "requir[es] the 'fair value' of the Trust Estate to be maintained at or above 130 percent of the Release Level Amount."  *ITCA II*, 956 F.3d at 1341.  The Deed of Trust defines "Release Level Amount" as:

> (i) the unpaid principal plus accrued interest on the Promissory Note, less

> (ii) the value of the United States Government-backed Securities and Deposited Monies held in the Trust Estate, and further less, after the expiration of two years from the Closing Date (as such term is defined in the Trust Fund Payment Agreement)
>
> (iii) the fair value, at the time of the calculation, of the Annuity.

(ECF 130-3 at 33.) The fair value of the Trust Estate is computed using a complex formula and requires a certified appraiser. (*Id.* at 34, 70.)

Crucially, the parties dispute the actual value of the Trust Estate at the time Interior released Collier's liens in 1998 and 2007 as well as in 2011, when Collier defaulted. The plaintiff relies on the defendant's statements in its litigation against Collier asserting that the Trust Estate had become under-collateralized.[4] (*See* ECF 137-2 at 34; ECF 140 at 25.) The defendant argues that the United States was required to release Collier's liens in 1998 and 2007 because the value of the Trust Estate exceeded 130 percent of the Release Level Amount when the liens were released. (*See* ECF 138 at 12.)

Neither party has provided evidence regarding the value of the Trust Estate over time relative to the Release Level Amount. A genuine dispute of material fact exists regarding whether the provision in the Deed of Trust requiring a certain level of security in the Trust Estate was violated. Accordingly, summary judgment is inappropriate on this issue.

In addition, the parties dispute the effect of the settlement on the plaintiff's claim. The defendant argues that the Trust Estate now exceeds 130 percent of the Release Level Amount, and that the plaintiff has therefore been made whole. (ECF 143 at 7.) The plaintiff argues that the $48 million settlement will not return "anywhere near" the value it believes it is owed; the plaintiff asserts that Collier still owed $66.4 million when it defaulted. (ECF 142 at 20.) There is a genuine dispute of material fact regarding whether the defendant breached its obligations and whether and to what extent the plaintiff remains harmed by the defendant's alleged breach.

### 2. Common-Law Fiduciary Duties

When the United States has a fiduciary obligation "by virtue of the governing statute or regulations, it is well established that [a court should] look to the common law of trusts, particularly as reflected in the [Restatement of Trusts], for assistance in defining the nature of that obligation." *White Mountain Apache Tribe v. United States*, 249 F.3d 1364, 1377 (Fed. Cir. 2001); *accord Arizona v. Navajo Nation*, No. 21-1484, 2023 WL 4110231, at *6 (U.S. June 22, 2023) (noting that common-law principles did not apply to an Indian trust claim unless a conventional trust relationship, such as the one found by the Federal Circuit to have been created by AFLEA, was established). "Under the common law of trusts, it is indisputable that a trustee has an affirmative duty to act reasonably to preserve the trust property." *White Mountain Apache*

---

[4] The plaintiff has not argued, however, that judicial estoppel arising from those representations applies here.

*Tribe*, 249 F.3d at 1378.  The relevant test in the Restatement, as quoted by the Federal Circuit, is whether the trustee administered the trust "'as a prudent person would.'"  *ITCA II*, 956 F.3d at 1343 (quoting Restatement (Third) of Trusts § 77).

      The plaintiff argues that the defendant should have performed independent appraisals before releasing Collier's liens, should have disclosed to ITCA sooner than it did that the collateral in the Trust Estate was low, and should have demanded Collier provide substitute security earlier than 2011.  Underlying the dispute is whether a "prudent person" would have undertaken these actions.  This inquiry requires more factual development and context.  *Cf. Aspen Consulting, LLC v. Sec'y of Army*, 25 F.4th 1012, 1016 (Fed. Cir. 2022) (noting that what a party did or did not do in relation to the obligations it was required to perform is a question of fact).  Many asserted facts that would support the reasonableness or unreasonableness of the defendant's actions as trustee, such as the statements of Interior officials, remain disputed.  Expert opinion is also likely to be relevant and necessary to resolving whether the defendant acted prudently.

      The Federal Circuit insinuated that the facts it deemed relevant would need to be "proven" before judgment could be entered on the plaintiff's claim that the defendant failed to maintain adequate security in the Trust Estate.  *ITCA II*, 956 F.3d at 1343.  Nonetheless, the parties have not engaged in any discovery in this case, and the facts argued on these cross-motions go no further than the facts argued in the defendant's previous motion to dismiss.

      *Jicarilla Apache Nation v. United States*, 100 Fed. Cl. 726 (2011), provides the approach that should be followed here.  In that case, Judge Allegra denied summary judgment on a breach-of-trust claim when it was unclear whether "the defendant acted with less than the requisite care."  100 Fed. Cl. at 739.  The relevant missing evidence in that case included the defendant's countervailing obligations, the defendant's general practice regarding the trust assets of tribal organizations, and interactions between the plaintiff and defendant.  *Id.* at 739-40.

      Similar evidence is relevant and missing in this case.  For example, the parties dispute whether the United States was required to release Collier from liens under the applicable circumstances; whether Interior's actions as trustee were appropriate; and what representations were made to the plaintiff regarding the financial condition of the Trust Estate.

      Neither party has produced sufficient uncontested facts to demonstrate the breach or non-breach of the defendant's fiduciary duties.  The plaintiff will have the burden of proof at trial, but the Federal Circuit's decision suggests that the plaintiff has alleged facts sufficient to support the existence of a breach, and the defendant has neither substantively engaged with nor controverted those facts at this stage of the case.

      To conclude, summary judgment is inappropriate on the portion of the plaintiff's Claim I that remains viable.  There is a genuine dispute of material fact regarding whether the United States complied with express provisions in the Deed of Trust.  Additionally, further factual development is necessary to determine whether Interior acted as a "prudent person" would have in its management of the Trust Estate, including the amount of security it maintained in the Trust Estate.

## V.     CONCLUSION

The Federal Circuit and Judge Firestone have already held that the defendant cannot be held liable for any annual interest payments still owing, and the plaintiff has forfeited its claim that the management of the trust by Interior violated the defendant's fiduciary duties. The defendant is entitled to judgment as a matter of law on those allegations.

Nonetheless, the defendant's lawsuit against Collier to recover outstanding funds does not automatically absolve the defendant of liability. A genuine dispute of material fact exists regarding the value of the Trust Estate over time and whether the United States complied with express provisions in the Deed of Trust. Additionally, further factual development is needed to determine whether the defendant complied with its common-law fiduciary duties to the plaintiff regarding the maintenance of security in the Trust Estate. Summary judgment is thus inappropriate for the remainder of Claim I of the plaintiff's second amended complaint.

The defendant's motion for partial summary judgment (ECF 129) is **GRANTED in part** with respect to the plaintiff's claims that have already been resolved in the defendant's favor. The plaintiff's claims in ¶¶ 255-59, 264-67, 268(a), and 268(b) of the plaintiff's pending second amended complaint (ECF 58) are **DISMISSED**. The remainder of the defendant's motion for partial summary judgment (ECF 129) is **DENIED**. The plaintiff's motion for partial summary judgment (ECF 137) is **DENIED**.

The parties shall file a joint status report by **August 29, 2023**, proposing a schedule for further proceedings and indicating whether they wish to undertake any further effort at resolving the remaining dispute through the court's alternative dispute resolution mechanism.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**